THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* AUDEY F. LAKE (Impleaded), Defendant-Appellant.

Fourth District   No. 14691

Opinion filed July 7, 1978.

Richard J. Wilson and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Fahey, State's Attorney, of Danville (Robert C. Perry and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

Literally caught red-handed!

Burglary—jury—guilty—4 to 12 years.

The trial court is affirmed.

Neither the facts nor the evidence are disputed. Lake, Smith, and Cronk drove to the company service center of Fleming Weller, Inc., in the early morning hours. Lake and Smith cut a hole in the fence surrounding the service center, kicked open the doors of the garage and a storage shed and stole a large, heavy, red toolbox and some equipment. After an attempt to sell the stolen goods, the police were apparently notified and they arranged for a surveillance. Their information was to the effect that three men driving a black-over-gold automobile had attempted to sell some stolen property. During the surveillance, the police officers observed Lake, Smith, and Cronk as they got out of a car which matched the automobile description. A few minutes later, all three of the men went to the rear of the automobile with another individual and when the trunk of the car was opened, the officers saw a large, red toolbox. All three (Lake, Smith and Cronk) were apprehended. The red toolbox (which bore the name of "T. S. Tatlock") was later identified by its owner as having been taken from the garage of Fleming Weller, Inc., where the owner was employed as a mechanic. Furthermore, a criminologist with the Illinois Bureau of Identification testified that certain footprints lifted from the doors of the garage and the storage shed displayed tread design

similar to those of the shoes worn by defendants Lake and Smith at the time of the arrest.

Cronk—an accomplice in the burglary—turned State's evidence and testified on behalf of the prosecution at Lake's trial.

Lake challenges not the quantum of proof, nor the evidence, nor his sentence. On only two issues does he ground this appeal: (A) the trial judge's limitation of his cross-examination of Cronk, the accomplice witness; (B) an inaccurate jury instruction.

## A

Cronk was called to testify for the State and his testimony was essentially this: He had been a co-defendant in the case on trial; he was also charged with the burglary; he agreed to testify for the State; his attorney and the State's Attorney had entered into negotiations regarding his testimony; it was agreed that his charge would be dropped to theft under $150 in return for his testifying; and there had been no specific agreement as to his possible sentence. Defense counsel on cross-examination attempted to inquire further of Cronk about Cronk's understanding of the consequences of the plea agreement, including the respective sentencing differences between burglary and theft under $150, and whether Cronk understood that burglary is a felony and theft under $150 is a misdemeanor. The State objected and the trial court sustained that objection with these comments:

> "THE COURT: You may inquire whether he is being given an opportunity to plead to an offense which carries a lesser penalty if you wish but not get into what the penalty or how many years or anything of this type. That gets the point across on whether he is aware of the fact he is being allowed to plead guilty to an offense which carries a lesser penalty."

Defense counsel then elicited from Cronk the accomplice's realization that he was pleading to a less serious offense and that he had been advised by his attorney that the plea agreement "was a good deal."

In ruling on this point when it was again raised in the post-trial motion, the trial judge explained that he had sustained the objection since "it was the admitted intention of counsel to examine the witness with regard to his knowledge of the penalty attached to the exact crime charged against the defendant" and that "the prejudicial impact of the jury of allowing testimony of the exact penalty to go before them for the crime to which the defendant then stood charged would exceed the rather questionable benefit that would accrue to the defendant through the legitimate use of that same testimony." In the defendant's brief, he acknowledges the court's reasoning: "Although the trial court correctly realized that there was a possibility of prejudice by allowing the jury to learn the penalties

for burglary, in this case the defendant's right to confrontation is far more important than any possible prejudice."

■■■ The trial judge correctly noted that any defendant is entitled to cross-examine a witness as to any matter which tends to explain, modify, or discredit his testimony, or which tends to show that his testimony might be affected by interest, bias, or motive to testify falsely. Although the scope of cross-examination is generally left to the trial court's discretion, the accused must be given wide latitude to establish bias or motive. (*People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708.) And particularly wide latitude should be allowed where the witness is an accomplice. (*People v. Bergeron* (1973), 10 Ill. App. 3d 762, 295 N.E.2d 228.) Where the defendant's theory is that the State's witnesses are unbelievable, it is reversible error not to allow cross-examination on matters which would reasonably tend to show bias, interest, or motive to testify falsely. *People v. Baptiste* (1976), 37 Ill. App. 3d 808, 347 N.E.2d 92.

Particularly does defendant point to *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, where it was held that the refusal to allow a defendant to cross-examine a juvenile witness as to his probationary status denied the accused his sixth amendment right to confront the witnesses against him, notwithstanding a State policy to protect the anonymity of juvenile offenders. It was held that the defendant's right to effective cross-examination of an adverse witness is paramount to a policy protecting the confidentiality of the juvenile record. But such is clearly not the case here since Lake was afforded ample opportunity to thoroughly cross-examine his accomplice, Cronk. Unlike *Davis* (in which the State's interest shielded the potential bias of a witness), cross-examination was simply curbed and curtailed to prevent disclosure of the sentencing provisions of the offence—a recognized practice in jury trials in Illinois.

The jury is the trier of fact and has no duty, authority, or responsibility as to the sentence which may, or may not, be imposed. That is within the purview of the presiding judge solely. Not only is a possible penalty immaterial and irrelevant to the jury, but any reference to possible sentence may well prejudice the State's right to a fair trial—a right that is equally important to a defendant's right, and a right that is often forgotten or neglected.

The decisions cited by the defendant obviously represent the correct law, but they do not divest the trial court of its traditional function of imposing reasonable restraints upon the scope of cross-examination. Unlike the cases relied on by defendant, the trial judge's ruling here did not curtail effective cross-examination of the accomplice witness. Defendant was able to conduct an extensive cross-examination, eliciting from accomplice Cronk all of the salient necessary facts: That he had made "a

good deal"; that he was testifying for a reduced charge; that there was a *quid pro quo*; that he was a co-defendant in this case; that he had been charged with burglary; that he was now charged with theft under $150; that it was a lesser charge; and that there was no agreement as to his sentence on the lesser charge. The only point upon which his cross-examination was limited was to compare or spell out the actual respective sentences.

■■ We conclude that the fairness of the trial was clearly not offended by the court's invocation of the policy against disclosing the penalty attached to the offense with which the defendant on trial was charged.

In *People v. Wilson* (1977), 48 Ill. App. 3d 885, 363 N.E.2d 374, this court was faced with a somewhat similar situation. The jury in *Wilson* was advised that an alleged accomplice witness had been granted immunity upon the charge the defendant was being tried on and that the accomplice witness would not have testified for the prosecution without such immunity. The defense attempted to cross-examine the accomplice witness as to the amount of time a parole agent told him he would have to serve on a prior offense once his parole was revoked, but an objection to this question was sustained by the court. The trial court noted that the agent's decision was not binding on the parole board and defense counsel would be permitted to show the witness's motive to testify falsely by probative cross-examination. This court found no abuse of discretion. In this case, as in *Wilson*, the defense was accorded ample and reasonable opportunity to explore the accomplice witness' possible interest, bias and motive to testify falsely.

No error.

B

People's Instruction No. 11 was given:

"To sustain the charge of burglary, the State must prove the following propositions:

First: That the defendants knowingly entered a building; and

Second: That the defendants did so without authority; and

Third: That the defendants did so with intent to commit the crime of theft.

If you find from your consideration of all the evidence that these propositions has been proved beyond a reasonable doubt, then you should find the defendants guilty.

If, on the other hand, you find from your consideration of all the evidence that each of these propositions has not been proved beyond a reasonable doubt, then you should find the defendants not guilty. I.P.I. Criminal Instruction No. 14.06."

There are two errors in that instruction, one of omission and one of substitution. In the approved IPI instruction the second paragraph should

read "that *each of* these propositions has been proved" and in the third paragraph it should read "that *any* of these propositions has not been proved." From the interlineation one can see what verbiage was omitted from Paragraph 2, and in the case of Paragraph 3 the word "each" was substituted for "any." Although both the defense and the prosecution address the substitution of the third paragraph, we further note the omission from the second paragraph.

The defendant argues that *People v. Wilson* (1976), 43 Ill. App. 3d 583, 357 N.E.2d 81, is a case similar to the one at bar. There the trial court failed to read an instruction which had been agreed upon, and the reviewing court held that failure to read an agreed instruction is plain error and may be considered even in the absence of an objection by the defendant. The cases are not similar at all. In *Wilson*, the trial judge inadvertently failed to charge the jury that it was to consider a prior conviction of the defendant only insofar as the conviction may affect his testimonial credibility. Here, there was no failure to read an instruction, it was only that the instruction was erroneously worded, primarily that the word "each" was substituted for "any."

We note here that no objection by defendant to the instruction appears of record, the matter was not preserved in the post-trial motion, and there was no defense argument going to this issue.

■■ But even ignoring the doctrine of waiver, we conclude and hold that the obvious typographical omission and/or substitution contained in this instruction are *de minimis* in nature and when viewed in the context of all 19 proper instructions given, the erroneous interchange of one word did not deprive the defendant of a fair trial. The trial judge included in his instructions to the jury the classic and routine *caveat*, "You must not single out certain instructions and disregard others."

Finally, any error in the giving of instructions is harmless where it is clear that under the evidence the jury's verdict could not have been different. (*People v. Farnsley* (1973), 53 Ill. 2d 537, 293 N.E.2d 600.) And where an improper instruction is given to a jury, reversal is inappropriate unless it can be said that a defendant was so prejudiced by the instruction as to affect the outcome of the verdict. *People v. Stewart* (1970), 46 Ill. 2d 125, 262 N.E.2d 911.

As we said at the beginning, the defendant was literally caught red-handed. And in light of the overwhelming evidence of his guilt, as well as the *de minimis* nature of the claimed instructional error, it seems clear to us that this case must be affirmed.


Affirmed.


REARDON, P. J., and CRAVEN, J., concur.