(No. 59700

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. FREDDIE GONZALEZ, Appellee.

*Opinion filed November 30, 1984.*

334

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat, Joan S. Cherry, James S. Veldman, Kevin S. Sweeney, and Thomas J. Finn, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

Michael Rodriguez, also known as "Monkeyman," was fatally shot on the corner of Cleaver and West Blackhawk streets in Chicago. A jury in the circuit court of Cook County found the defendant, Freddie Gonzalez, guilty of the murder, and he was sentenced to a prison term of 35 years. The appellate court reversed the conviction and remanded the cause for a new trial, holding *inter alia* that the trial court's ruling forbidding any reference to gang membership in the case improperly limited the defendant's cross-examination of one of the two occurrence witnesses (120 Ill. App. 3d 1029).

Three issues are raised in this appeal: (1) whether the defendant was denied an adequate opportunity to prepare for trial; (2) whether the ruling forbidding any reference to gang membership improperly limited the defendant's right of cross-examination; and (3) whether

the trial court erred in refusing to allow the defendant to impeach his own witness. Because we affirm the appellate court on the second issue, we need not reach the other questions raised.

During jury selection, the question of whether evidence of gang membership would be permitted was raised on several occasions by both the prosecution and the defense. After the jury had been selected, but prior to opening statements, defense counsel indicated that such evidence was necessary to their theory of the case. They requested an *in camera, ex parte* hearing to elaborate that theory. The prosecution then made a motion *in limine* to bar cross-examination of David Alonso, one of the State's chief witnesses, on the subject of gang membership. The court ruled that "[t]here is to be no reference to gang affiliation in this case."

The *in camera* hearing requested by the defense was granted after this ruling and before trial commenced. Defense counsel later repeated for the record the information presented to the court at the *in camera* hearing regarding their theory of defense and the role that gang affiliation played in the case. They informed the court that the defendant had recently become a father and withdrawn from gang membership, that Alonso was a "collector" and "enforcer" for the gang, that members had threatened to "get" the defendant if he did not renew his gang activities, that some of those threats had been made by Alonso, and that the defendant's family had been subjected to harassment by the gang. The defense theory was that Alonso fabricated his testimony either to "get" the defendant as the gang had threatened, or because Alonso was present at the scene of the murder for which he might himself be accountable. The trial court nevertheless adhered to its ruling.

At trial, the State's case consisted primarily of the testimony of Robert Burden and Alonso. Burden, who

was 13 years old at the time of the incident, testified that just prior to the shooting he had passed the victim walking on Blackhawk. He also saw Alonso, Mario Zuniga, who did not testify, and the defendant standing in a gangway on Cleaver. Burden had known Alonso and Zuniga for several years, but did not know the defendant, although he had seen him around the neighborhood. Burden saw the defendant put a beige hat on his head, run across Cleaver into an alley behind two buildings, emerge in a lot on the other side of the buildings, pull a gun, fire at the victim four or five times, and run back the way he had come. After the shooting, Burden gave police a description of the assailant and said that he could identify him, but he did not give the police the defendant's name.

Alonso testified that prior to the shooting he was playing basketball with the victim and Burden's brother in the Pulaski Park fieldhouse at Cleaver and Blackhawk. When he went into the hall to get a drink of water, the defendant, then a friend of his, asked if "Monkeyman" was one of the people playing basketball in the gym. Alonso said that he was, and the defendant left. A short time later, Alonso left the fieldhouse and met the defendant and Zuniga. As the three stood in a gangway on Cleaver, Alonso saw the victim cross Blackhawk and Cleaver. The defendant ran across Cleaver into an alley behind two buildings, pulling a tan ski mask over his face. Zuniga and Alonso walked to the corner of Blackhawk and Cleaver, and Alonso crossed Blackhawk. He saw the defendant run up behind the victim and raise both hands. Then he heard five or six gunshots and saw the defendant with the ski mask in his hand run out of the alley back to the gangway where the three had stood prior to the shooting.

The sole witness for the defense, Chicago police detective Gary Bulava, testified that he had interviewed

Burden on the day of the murder and filed a report. Burden did not tell him during that interview that he had seen the defendant with Alonso and Zuniga prior to the murder. On cross-examination, Bulava said that Burden had told him that he could identify the assailant. On redirect examination, Bulava testified that Burden had said that he had seen the defendant around the neighborhood. When defense counsel tried to inquire whether Bulava's report contained this information, the trial judge sustained the State's objection, stating that an omission from a police report cannot be used to impeach an officer's testimony. At this point, defense counsel repeated for the record the information given to the court at the *in camera* hearing and renewed their request to introduce gang-related evidence, which the court refused.

We hold that the trial court's ruling that "[t]here is to be no reference to gang affiliations in this case" improperly limited the defendant in cross-examining Alonso as to his bias or motive to testify falsely. The right to cross-examine a witness as to his biases, prejudices, or ulterior motives is protected by both the Federal and Illinois constitutions. (U.S. Const., amend. VI, XIV; Ill. Const. 1970, art. I, sec. 8; see *Davis v. Alaska* (1974), 415 U.S. 308, 315-17, 39 L. Ed. 2d 347, 353-54, 94 S. Ct. 1105, 1109-11.) As the Supreme Court noted in *Davis*, "[t]he partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' [Citation.] *** [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." (415 U.S. 308, 316-17, 39 L. Ed. 2d 347, 354, 94 S. Ct. 1105, 1110.) This court has held that the widest latitude should be given the defense on cross-examination when trying to establish a witness' bias or motive. *People v. Wilkerson*

(1981), 87 Ill. 2d 151, 156.

The State argues that the issue in the case was the identity of the assailant, that evidence of gang membership was collateral to that issue, and that such evidence was therefore subject to restriction. Where, as here, the defense theory is that the defendant is being framed, and the witness who first identified the defendant as the assailant and led police to his address allegedly has a motive to testify falsely against the accused, the evidence necessary to show that motive is hardly collateral.

The State insists that the trial court's ruling did not prevent defense counsel from cross-examining Alonso as to the motive for his testimony. Gang affiliation and the concerted activity of the gang in threatening the defendant and harassing his family formed the very basis of the defense theory, however, and neither in their briefs nor at oral argument did the State suggest just how defense counsel could have framed questions designed to elicit the necessary information without reference to gang membership and activities.

Questions regarding Alonso's gang activities and threats against the defendant were clearly relevant to the reliability of Alonso's testimony, and should have been allowed. Illinois courts have often held questions regarding gang affiliation proper when the State has sought to introduce evidence of the defendant's gang activities, in spite of the risk of prejudice to the defendant. (See, *e.g.*, *People v. Miller* (1981), 101 Ill. App. 3d 1029, 1033-35; *People v. Garcia* (1978), 65 Ill. App. 3d 472.) Simple justice requires a symmetrical rule that allows a defendant to ask such questions on cross-examination to show bias in a State's witness.

Restricting the defendant's cross-examination of Alonso was not a harmless error under any of the three ways set forth by this court in *People v. Wilkerson* (1981), 87 Ill. 2d 151, 157, for determining whether an

error is harmless beyond a reasonable doubt, the standard required by *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824. First, the error may well have contributed to the defendant's conviction, inasmuch as Alonso was the first to identify the defendant as the offender and he led police to the defendant's home. He was also the witness closest to the scene at the time the shooting occurred. His testimony included an incriminating account of the defendant's actions prior to and after the shooting. All of this testimony remained untested as to bias as a result of the trial court's ruling. We cannot say that under these circumstances the error was harmless beyond a reasonable doubt.

Second, the other evidence in the case does not overwhelmingly support the conviction. There was little, if any, physical evidence linking the defendant to the shooting, and the other evidence supporting conviction consisted almost entirely of Burden's testimony. However, Officer Bulava cast doubt on Burden's testimony by noting some inconsistencies between the report he gave to police at the time of the shooting and his testimony at trial. Burden was sequestered in State custody prior to and during trial, during which time he shared meals with Alonso and discussed the case with police. While Burden's testimony paralleled Alonso's, it cannot now be determined how the jury might have viewed Burden's testimony if cross-examination of Alonso had established bias or a motive to fabricate.

Finally, evidence of gang affiliation would not have been cumulative or duplicative. The trial court's blanket ruling prohibiting any evidence of this sort ensured that no such evidence was admitted. Thus, the trial court's denial of the defendant's right to cross-examine Alonso cannot be held to have been harmless.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*