THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VINCENT C. LOPEZ, Defendant-Appellant.

First District (5th Division)   No. 83—2854

Opinion filed December 14, 1984.

Julius Lucius Echeles, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Mark L. Rotert, Assistant Attorney General, and Sally L. Dilgart, of counsel), for the People.

JUSTICE PINCHAM delivered the opinion of the court:
Defendant, Vincent C. Lopez, an attorney, was charged in an indictment with theft. (Ill. Rev. Stat. 1981, ch. 38, par. 16—1(a)(1).) In

pertinent part, the indictment alleged that on or about April 26, 1968, and continuing thereafter until on or about August 25, 1979, defendant committed the offense of theft in that, as trustee, he knowingly exerted unauthorized control over the property of the Heinemann Family Foundation and the beneficiaries of the Heinemann Family Foundation in the sum of $115,957, with intent to permanently deprive the beneficiaries of the use and benefit of their property.

Following a bench trial, defendant was found guilty and was sentenced to serve 30 months' probation and to pay $90,000 restitution. On appeal, relying on the alleged insufficiency of the evidence, defendant contends that he was not proved guilty beyond a reasonable doubt because: (1) the evidence failed to establish that defendant intended to permanently deprive the foundation or an identifiable class of beneficiaries of their property; (2) defendant treated his withdrawals from the foundation's accounts as loans which he reflected in the foundation's reports and records; and (3) defendant's character and reputation evidence created a reasonable doubt of his guilt. Defendant further contends that there was a fatal variance between the allegations in the indictment and the evidence adduced at trial. We affirm.

The Heinemann Family Foundation was a charitable trust created in 1966 under the terms of the will of Edward Heinemann. The trust income was to be used to assist Christian Science institutions, orphanages, crippled and underprivileged children and animal welfare organizations. Defendant was the president, treasurer, director and sole trustee of the foundation, and he was the only authorized person who could sign for withdrawals from the foundation's accounts. Defendant was thereby able to withdraw money at his discretion from the foundation's accounts at the La Salle National Bank in Chicago. The foundation's assets consisted of $108,637 in cash, stocks, dividends and two parcels of rental income property.

A 1981 audit of the foundation by the Illinois Attorney General revealed that from 1968 to 1979 the foundation's checking and savings accounts were practically depleted. Between 1974 and 1979 defendant signed approximately 25 checks on the foundation's accounts and deposited the money into his personal checking account at another Chicago bank. Most of these checks were made payable to defendant. A few were made payable to cash. The checks varied in amounts from $400 to $10,000. Although $7,615 in charitable contributions was made during the period 1974 to 1979, defendant withdrew $107,300 from the foundation's accounts for his personal use. Sequential check numbers, especially for June 1978 to March 1978, revealed that almost all the checks withdrawn on the foundation's accounts were made payable to

defendant. In 1978, on January 12, 13, August 18 and December 6, defendant issued checks to himself in the amounts of $5,000, $7,500, $1,700 and $400. By the end of 1979, defendant had reduced the foundation's accounts from the initial amount of $108,637 to $801. Defendant also sold all the stock, reduced the foundation's interest in its rental property by more than one-half and converted $11,750 of the foundation's rental income to his personal use.

When the defendant withdrew money for his personal use from the foundation's accounts, he drafted unsecured promissory notes in the amount of the withdrawals, which ultimately totaled $122,457. The Attorney General's audit reflected a total repayment by the defendant over an extended period of only $6,000.

As trustee of the foundation, defendant was required under the Charitable Trust Act (Ill. Rev. Stat. 1981, ch. 14, par. 57) to file annual financial reports of the foundation with the Attorney General's office. Defendant did not do so. The reports for 1975, 1976 and 1977 were not filed until December 27, 1978. The annual report for 1978 was not filed until January 25, 1980. No reports were filed for the years after 1978. Following the Attorney General's 1981 audit of the foundation, the instant theft indictment was returned.

Defendant argued before the trial court (as he does on appeal) that although he converted the foundation's money to his personal use, he never intended to permanently deprive the beneficiaries or the foundation of the funds, and that the transactions were loans which were evidenced by his promissory notes and his partial repayments. The trial court rejected this contention.

■ Prior to addressing the merits of this appeal, we first resolve the State's threshold contention that defendant's post-trial motion to vacate the finding of guilt was untimely filed and that defendant therefore has waived appellate review of his conviction and sentence. The guilty finding was entered by the trial court on April 20, 1983. Defendant filed a post-trial motion to vacate this finding 72 days later, on June 30, 1983. The State urges that the motion was untimely filed because it should have been filed within 30 days after the guilty finding was entered. Ill. Rev. Stat. 1981, ch. 38, pars. 116—1(b) and 116—2(a).

Final judgment in a criminal case is not entered until the imposition of the sentence. The final judgment in a criminal case is the sentence. (*People v. Blakeney* (1978), 59 Ill. App. 3d 119, 124, 375 N.E.2d 1309.) In the pending case, defendant's post-trial motion was filed on June 20, 1983, long before the date on which sentence was imposed, which was November 22, 1983. The trial court expressly ruled that the motion was timely filed. We will not disturb that finding.

■ Turning now to the merits of this appeal, defendant contends that the evidence failed to establish that he intended to permanently deprive an identifiable class of beneficiaries of their interest in the foundation's property. This "speculative interest," defendant posits, fails to satisfy the statutory element of ownership as that word is used in the criminal code. We do not agree. The Illinois theft statute (Ill. Rev. Stat. 1981, ch. 38, par. 16—1) reads, in pertinent part:

"A person commits theft when he knowingly:

(a) Obtains or exerts unauthorized control over the property of the owner ***."

An "owner" is defined as "a person, other than the offender, who has possession of or any other interest in the property involved *** and without whose consent the offender has no authority to exert control over the property." Ill. Rev. Stat. 1981, ch. 38, par. 15—2.

In the pending case, the indictment alleged that the property over which defendant exerted unauthorized control was owned by the Heinemann Family Foundation and the beneficiaries of the Heinemann Family Foundation. The beneficiaries were specifically alleged in the indictment to be:

"(a) Christian Science Churches and other Christian Science institutions, especially *** [the] Seventh Church of Christ Scientist in Chicago, Illinois;

(b) [C]rippled and underprivileged children and young people and *** hospitals, orphanages and other institutions devoted to giving such aid, especially to Protestant children and young people and Protestant institutions;

(c) Animal welfare."

The identity of the owners and beneficiaries of the appropriated monies was thus properly alleged and adequately proved. Moreover, as the court stated in *People v. Tucker* (1976), 35 Ill. App. 3d 630, 632-33, 342 N.E.2d 395:

"Section 15—2 of the Criminal Code defines an 'owner' of property, as used in the Title of the Code relating to offenses directed against property, as 'a person, other than the offender who has possession of or any other interest in the property involved, even though such interest or possession is unlawful, and without whose consent the offender has no authority to exert control over the property.' [Citation.]

Unless prejudice can be shown from a variance between the allegations of the charge and the proofs at trial, demonstrating that the accused was unable to prepare his defense or that he would be subject to a second prosecution for the same offense,

the variance will not be considered fatal nor will it mandate a new trial.

\* \* \*

The courts have avoided rigid formality in such cases and have looked to whether the charge and the proofs have demonstrated that the subject property was not that of the accused, that he was able to prepare a defense to the charge and that he would be able to plead the acquittal or conviction thereunder in a subsequent prosecution for the same offense. Where those functions of the charge and the proofs have been realized, the conviction has not been reversed."

In the instant case, not only were the beneficiaries identified, the defendant was not prejudiced by the lack of a more specific identification of the beneficiaries in the indictment or at trial. Scott's treatise on the law of trusts states:

"In the case of a charitable trust *there is ordinarily no definite beneficiary*, but the trust is enforceable at the suit of the Attorney General or other public officer. [Citation.] The trustee of a charitable trust is subject to duties as fiduciary similar to those to which the trustee of a private trust is subject, such as the duty of loyalty and the duty not to delegate. Thus a trustee of a charitable trust, like a trustee of a private trust, violates his duty if he permits his self-interest to conflict with his duties as trustee, as, for example, where he sells trust property to himself individually, or purchases his individual property for the trust.

\* \* \*

A trustee of a charitable trust is clearly under a duty to properly administer the trust, but it is difficult to see who has the correlative right. \*\*\* It can hardly be said that the duty is owing to the state. \*\*\* [T]he trustee of a charitable trust owes duties, but the duties are not owing to any person or persons in particular, though they are enforceable at the suit of a public officer for the benefit of the community." (Emphasis added.) IV Scott, Law of Trusts sec. 348, at 2769 (3d ed. 1967).

Thus, the beneficiaries of the Heinemann trust, in addition to the "Christian Science Churches and other Christian Science institutions, especially to Seventh Church of Christ Scientist in Chicago, Illinois," though not otherwise specifically identified by personal name in the indictment, constitute "owners" as that term is used in the statute defining theft. (Ill. Rev. Stat. 1981, ch. 38, par. 15—2.) The funds converted by the defendant to his personal use were, therefore, "owned by another."

■ Defendant further contends that the evidence failed to establish beyond a reasonable doubt that he intended to permanently deprive "anyone" of their property. He argues that the evidence established instead that his withdrawals were loans because (1) he made no effort to conceal his withdrawals and conversion of the trust funds to his personal use; (2) he documented his use of the trust funds with his promissory notes made payable to the trust; and (3) he made partial payment on the notes. From this, defendant concludes, any intent to permanently deprive the owners of their property was negated. Again, we do not agree.

■ Whether a person intended to permanently deprive an owner of the benefit of his property is a question of fact to be decided by the trier of fact. (*Spalding v. People* (1898), 172 Ill. 40, 42, 49 N.E. 993.) In our view, this question was properly resolved by evidence of the defendant's voluntary commission of acts which permanently deprived the true owners of their property, and by defendant's appropriation of the property to his own use. The defendant's mere contention that he did not intend to permanently deprive the foundation or beneficiaries of their property is not decisive on the issue of his intent. *People v. Curoe* (1981), 97 Ill. App. 3d 258, 274, 422 N.E.2d 931.

In finding that the State sustained its burden of proving defendant's felonious intent, the trial court was justifiably persuaded by the following evidence: (1) in 1976 defendant filed annual reports (10 years after the foundation had been established in 1966) which revealed that the amount receivable from the defendant had reached approximately $24,000; (2) by 1977 defendant had appropriated $57,000 from the trust funds to his personal use; (3) in 1978 $23,000 was taken from the foundation's accounts, bringing the total to approximately $115,000; (4) by 1981 the trust fund had been dwindled by the defendant to $801; and (5) as the trial court pointed out, defendant was unable to and had no means to repay the money that he had misappropriated. The trial court concluded:

> "Notes were given and the defendant feels that disclosure makes it a different kind of transaction.
>
> I don't know when the [promissory] notes were made. All I know [is that] in '76 they existed. If they really existed in the reports of the defendant, whether you call that secrecy or not, I don't know. But he had all the reports.
>
> I don't feel the notes themselves enter into the case as an intention on the part of the defendant to pay it back.
>
> No more than would a man coming into a bank, putting a gun to the teller [and making the demand] 'Give me your money' and

getting the money and saying, 'By the way, here's a note for it. I owe it to you.' "

The trial court further pointed out that if defendant "had stopped" at $23,000, there conceivably could be an inference that he would eventually make some sort of reimbursement to the foundation. Instead, the trial court noted, defendant "went on and on way beyond [his] ability to pay."

The *Curoe* decision is particularly persuasive on the issue of defendant's criminal intent to permanently deprive the beneficiaries of the use and benefit of their property. Like the defendant here, the defendant in *Curoe* was an attorney who, as administrator of an estate, had exclusive control over considerable sums of money. Additionally, both defendants had a confidence reposed in them by virtue of their fiduciary position, both had complete discretion as to how the money over which they had control was to be spent and in both cases it was argued that the defendant's unsecured, unverified promissory notes for the purloined monies, which notes were kept in the defendant's exclusive control, negated the defendant's criminal intent to permanently deprive the owners of their property. The defendant in *Curoe* was indicted for theft as the administrator of an estate and was accountable to certain named beneficiaries, however. The defendant in the pending case was charged as the trustee of a charitable trust fund whose beneficiaries included unnamed children and organizations that were identified by their social orientation or religious denomination. We find this factual distinction unpersuasive. Instead, we are more influenced by the above-mentioned factual similarities, coupled with the court's rationale in *Curoe* that:

> "To 'permanently deprive' means, *inter alia*, to 'sell, give, pledge, or otherwise transfer any interest in the property or subject it to the claim of a person other than the owner.' (Ill. Rev. Stat. 1971, ch. 38, par. 15—3(d).) The evidence presented at the trial of this case clearly established that defendant intended to permanently deprive the heirs of the use and benefit of their property. Defendant appropriated assets from the estate and by his own admissions applied them to his own economic advantage. What he gave the estate in return was a series of unsecured, unverified and unwitnessed promissory notes which may or may not have had any value. Within the context of section 15—3(d) defendant, by transferring interests in the estate property and subjecting that property to the claims of persons other than the rightful owners, intended to permanently deprive the heirs of their property.

* * *

*** In the instant case defendant, beginning on December 28, 1972, only six days after he was appointed administrator and continuing until January 10, 1974, withdrew almost $400,000 from the assets of the estate of Louis Moritz and used these funds for his own financial gain. None of the diversions of the estate assets was done with the knowledge or consent of either the probate court or the heirs. Under these circumstances it is appropriate to conclude that defendant embezzled those moneys and was properly found guilty of theft. Defendant, however, argues that 'the records and disclosures made at the time of the occurrence are circumstances which negate felonious intent' and cites *People v. Stevens* (1934), 358 Ill. 391, 405, 193 N.E. 154, for the proposition that 'the absence of proof of secrecy and concealment is a circumstance which tends to negative the charge that the accused was actuated by a felonious intent.' (See also *People v. Parker* (1934), 355 Ill. 258, 286, 189 N.E. 352.) In our opinion defendant's reliance on this principle is completely unfounded.

* * *

Defendant's production of promissory notes at the November 8, 1974, meeting and his assurances to repay the heirs do not negate his criminal intent [citation] even if defendant had proven that the notes had been executed contemporaneously with his appropriation of the estate assets [citation]. Defendant's testimony that he had no intention to permanently deprive the heirs of their property is not decisive on the issue of his intent. [Citation.] As the court observed in *Spalding v. People* (1898), 172 Ill. 40, 59-60, 49 N.E. 993:

'A guilty intent is necessarily inferred from the voluntary commission of *** an act, the inevitable effect of which is to deprive the true owner of property and appropriate it to the defendant's own use. Perhaps in a majority of cases the party who violates his trust in such a manner does not expect or intend that ultimate loss shall fall upon the person whose property he takes and misuses. But no hope or expectation of replacing the funds abstracted can be admitted as an excuse before the law.' " 97 Ill. App. 3d 258, 273-74.

The court in *Curoe* concluded that the defendant was proved guilty beyond a reasonable doubt of theft, but reversed the judgment of conviction on other grounds. In the case at bar, like the court in *Curoe*, we too are unpersuaded by the argument that the evidence failed to establish beyond a reasonable doubt that the defendant intended to perma-

nently deprive the owners of their property. The trial court's finding will therefore be upheld.

■ It is next argued that the testimony of several character witnesses who testified that the defendant enjoyed a good reputation for honesty and integrity raised a reasonable doubt of defendant's guilt. This contention must fail. Although evidence of an accused's good reputation for honesty and integrity may raise a reasonable doubt of his guilt, it is within the province of the trier of fact to make that determination, which should not be disturbed on review except where the evidence of guilt is unsatisfactory, improbable or implausible. (*People v. Villalobos* (1979), 78 Ill. App. 3d 6, 11-12, 396 N.E.2d 1081.) The authorities on which the defendant relies for reversal, *People v. Buchholz* (1936), 363 Ill. 270, 2 N.E.2d 80; *People v. Ricili* (1948), 400 Ill. 309, 79 N.E.2d 509; *People v. Shockey* (1964), 30 Ill. 2d 147, 195 N.E.2d 703; *People v. Eatman* (1950), 405 Ill. 491, 91 N.E.2d 387; *People v. Bush* (1972), 4 Ill. App. 3d 669, 281 N.E.2d 734; *People v. Lonzo* (1974), 20 Ill. App. 3d 721, 315 N.E.2d 256; *People v. Heilemann* (1936), 362 Ill. 322, 199 N.E. 792, are inapposite and uncontrolling here. Accordingly, the trial court's finding will not be disturbed.

■ Defendant's final contention is that there was a fatal variance between the indictment and the proof adduced at trial. Defendant argues that while the indictment alleged that the theft occurred from 1968 through 1979, the proof according to the trial judge's express findings established that the theft did not commence until 1976 or 1977. Defendant does not contend that the proof established a theft within a time period not alleged in the indictment. Rather, he argues, because the proof established theft within a more brief time period than alleged, a fatal variance exists. The mere statement of that proposition clearly reveals its obvious inaccuracy. Defendant was *not* convicted for a crime that was not charged in the indictment. There was no variance between the indictment and the proof, because proof of defendant's theft from 1976 to 1979 was well within the period alleged, 1968 through 1979.

The judgment of conviction of theft is affirmed.

Affirmed.

MEJDA, P.J., and SULLIVAN, J., concur.