THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RANDY ROY, Defendant-Appellant.

Fourth District    No. 4—87—0884

Opinion filed July 14, 1988.—Rehearing denied August 10, 1988.

Frederick F. Cohn, of Chicago, for appellant.

Don W. Weber, State's Attorney, of Paxton (Kenneth R. Boyle, Robert J. Biderman, and David Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

On October 7, 1986, the defendant, Randy Roy, was indicted by the grand jury of Ford County on charges of unlawful delivery of a controlled substance (30 grams cocaine) (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)), calculated criminal drug conspiracy (Ill. Rev. Stat. 1985, ch. 56½, par. 1405), and calculated criminal cannabis conspiracy (Ill. Rev. Stat. 1985, ch. 56½, par. 709(a)). Following a jury trial, the defendant was convicted of unlawful delivery of a controlled substance (30 grams cocaine) and calculated criminal drug conspiracy. He was subsequently sentenced to a term of eight years' imprisonment and a fine of $22,500.

The defendant appeals asserting: (1) the evidence was insufficient to sustain his convictions; (2) he was denied the constitutional right to confront the witnesses against him; and (3) the verdict forms, which failed to specify the weight of the drugs involved, were inadequate.

At trial, the State presented Mark Johnson, a Paxton resident and admitted drug dealer. Johnson was arrested on September 3, 1986, and subsequently charged with delivery of cocaine in excess of 30 grams and calculated criminal drug conspiracy. Johnson admitted he was testifying pursuant to an agreement with the State whereby certain charges pending against him were to be dismissed in exchange for his testimony.

Johnson stated that he used drugs, specifically marijuana and cocaine. He stated that he purchased his drugs from the defendant, whom he met in June of 1985. Johnson was introduced to the defend-

ant by a friend of his, Bill Anderson. Johnson then asked the defendant if he could start dealing drugs and the defendant agreed. Johnson explained that the defendant fronted the drugs and he would pay the defendant after he had sold them. Usually the drugs were delivered to Johnson by a runner employed by the defendant. This runner was identified by Johnson as Bob Moore.

Johnson reiterated all of his past dealings with the defendant. Johnson estimated that he had made in excess of $100,000 in drug sales over a one-year period. Johnson sold both marijuana and cocaine. Johnson usually paid $750 to $850 per pound for marijuana and $1,800 to $1,900 per ounce for cocaine.

On August 15, 1986, Johnson contacted the defendant regarding the delivery of some cocaine. Shortly thereafter he received approximately four ounces of cocaine. He estimated the value of the drugs at $7,000. As in the past, Johnson did not pay for the drugs upon receipt. The drugs were delivered to his residence in Paxton by Bob Moore. Johnson additionally stated that in the late spring of 1986 he received 80 to 90 pounds of marijuana from the defendant. The marijuana was delivered in 10-pound lots.

Johnson explained that he would then distribute the marijuana to other individuals, specifically Dave Kemmitzer and Randy Hobbs. Johnson explained that he generally sold the marijuana in pound lots. Upon receipt of a new shipment, Johnson would reimburse the defendant for the previous delivery.

On the date of his arrest, September 3, 1986, Johnson was in Randy Hobbs' trailer when there was a police raid. Johnson stated that he was in possession of $9,000 cash and a half ounce of cocaine. Johnson stated that this cocaine was purchased from the defendant.

Subsequent to his arrest, Johnson's home was searched by the police. During the search, the officers confiscated a black notebook containing names, addresses, and dollar amounts. Johnson testified that this book contained names of people he sold drugs to as well as people who owed him money. Johnson admitted that neither Randy Roy nor Bob Moore was listed in the book. Johnson claimed, however, that the book was mainly a listing of debts and not drug-related transactions.

On cross-examination, Johnson explained the specifics of his plea agreement with the State in return for his testimony. Johnson stated the charge of calculated criminal conspiracy was to be dismissed. Johnson would plead to the remaining charge. Johnson was offered 4 years' probation, 90 days in the Paxton County jail, $13,000 forfeiture of cash, and a $3,000 fine as a sentence. Johnson further stated that

on October 7, 1986, he testified before the grand jury regarding the defendant's involvement in the drug trade in Paxton. At that time, Johnson named a number of individuals to whom he had sold drugs in the past. He admitted at trial that he did not name the same individuals as purchasers during his direct testimony.

The State next presented five witnesses, including Todd Hofer, Brian Breymeyer, Richard Ingold, William Cofel, and Alexander Michael Dorshe. Each of these individuals testified they used illegal drugs and that they purchased either marijuana or cocaine from Mark Johnson. None of the individuals, however, knew of Randy Roy or Bob Moore.

Gary King, special agent with the Illinois Division of Criminal Investigation, Narcotics Division, testified that he made controlled buys of narcotics from Randy Hobbs, a Paxton resident. On August 22, 1986, King met Hobbs at his trailer and arranged for the purchase of a quarter ounce of cocaine. On that date, Hobbs indicated he would have to go to Champaign to obtain the drugs. Hobbs told King he would meet with him the next day. King returned the next day and purchased a quarter ounce of cocaine for $620. Laboratory results from the analysis of the drugs purchased revealed 6.7 grams of cocaine. On cross-examination, King admitted that during the purchase from Hobbs, the names of Randy Roy and Bob Moore were not mentioned.

Randy Hobbs, a Paxton resident, recently convicted of selling cocaine, testified that he purchased all of his drugs from Mark Johnson. Hobbs stated that the cocaine sold to Gary King on August 22, 1986, was purchased from Mark Johnson. On cross-examination, Hobbs claimed that he did not know Randy Roy or Bob Moore.

The State finally presented Kenneth Wurl, of the Illinois State Police, Narcotics Division. Wurl stated he assisted in the execution of a search warrant at Hobbs' trailer in Paxton on September 3, 1986. This was the date on which Mark Johnson was arrested for possession of cocaine. The cocaine recovered from Johnson was subsequently sent to the State crime lab for analysis. Test results revealed the presence of approximately 16 grams of cocaine. Wurl stated that a deal was made with Hobbs whereby Hobbs was to produce cocaine and an undercover agent in return was to deliver a certain amount of marijuana. The amount of money involved exceeded $20,000. On September 4, 1986, Wurl interviewed Johnson at Illinois State Police headquarters. At this time, Johnson indicated that he received the drugs from Bob Moore.

The defense presented two character witnesses. Michael Raleigh

and Lee Bell both testified that the defendant was a moral and upright individual with a good reputation in the community.

Following deliberations, the jury returned verdicts of guilty on all three counts, unlawful delivery of a controlled substance, calculated criminal drug conspiracy, and calculated criminal cannabis conspiracy. Following a hearing on defendant's post-trial motion, the court vacated the conviction for calculated criminal cannabis conspiracy. The defendant was subsequently sentenced to a term of eight years' imprisonment and a fine of $22,500.

The defendant initially challenges the sufficiency of the evidence. Defendant claims the uncorroborated testimony of an accomplice, who testifies pursuant to a deal with the State's Attorney, standing alone, cannot support a conviction.

The standard of review of criminal convictions is well established. A conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Byron* (1987), 116 Ill. 2d 81, 89-90, 506 N.E.2d 1247, 1250, quoting *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.

In *Collins*, the Illinois Supreme Court adopted the standard as enunciated in *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789, quoting:

> " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.)

The court went on to note:

> " 'Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' (Emphasis in original.) 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789." *Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.

The uncorroborated testimony of an accomplice can be sufficient to sustain a conviction where the jury is convinced beyond a reasonable doubt. (*Byron*, 116 Ill. 2d 81, 506 N.E.2d 1247; *Collins*, 106 Ill. 2d 237, 478 N.E.2d 267.) The problems inherent in accomplice testimony are well recognized. An accomplice may have been promised leniency or harbor ill will toward the accused. (*People v. Newell* (1984), 103 Ill. 2d 465, 469 N.E.2d 1375.) Consequently, such testi-

mony should be accepted with the utmost caution and subjected to the highest scrutiny. Ultimately, however, the determination of whether such testimony forms a sufficient basis for conviction is one for the jury, which is entrusted with the task of assessing the credibility of the witnesses and the weight afforded their testimony. *Byron*, 116 Ill. 2d at 90, 506 N.E.2d at 1250, quoting *Collins*, 106 Ill. 2d at 261-62, 478 N.E.2d at 277.

■ Contrary to the defendant's assertions, the fact that an accomplice has been promised leniency in return for testimony does not automatically raise a reasonable doubt as to the defendant's guilt. (*People v. Sangster* (1981), 95 Ill. App. 3d 357, 420 N.E.2d 181, *aff'd in relevant part and rev'd in part* (1982), 91 Ill. 2d 260, 437 N.E.2d 625.) Likewise, the introduction of good character evidence by the defendant does not in itself create a reasonable doubt. (*People v. Lopez* (1984), 129 Ill. App. 3d 488, 472 N.E.2d 867.) Although these types of evidence may raise a reasonable doubt regarding the defendant's guilt, it is within the province of the trier of fact to make that determination. *Lopez*, 129 Ill. App. 3d 488, 472 N.E.2d 867.

■ In reviewing a sufficiency question we will neither reweigh the evidence nor judge the credibility of the witnesses. The evidence herein indicated that Johnson had been involved in a series of ongoing drug transactions with the defendant for a period dating back to the summer of 1985. The jury was made well aware of Johnson's involvement in the drug trade in the Paxton area as well as his pending charges and plea arrangement with the State's Attorney's office. The jury was informed of the infirmities of Johnson's testimony and was specifically instructed that Johnson's testimony was to be viewed with suspicion. The jury, however, chose to believe the testimony of Johnson over the evidence presented by the defendant. In viewing all the evidence presented in a light most favorable to the prosecution, we cannot say that the defendant's convictions were unsupported.

The defendant next contends that the trial court unduly restricted his right to cross-examine the State's main witness, Mark Johnson. During cross-examination, the following colloquy ensued:

"Q. [PROSECUTOR]: Now, on October 7, do you recall this question being asked: 'As a result of your talking with the agents, has it been agreed that although you will be indicted on three counts, you will be asked to plea to just to one count, Class I felony, and the other two charges will be dismissed?'

A. [MARK JOHNSON]: Correct.

Q. You had a deal worked out, didn't you?

A. Correct.

Q. Still have a deal worked, don't you?

A. Yes.

Q. When you're done testifying, you'll be able to take your plea and that will take care of the case, right?

A. Hopefully.

Q. You're going to get probation, aren't you?

A. I don't know.

Q. Have you been offered 4 years' probation, 90 days in the Paxton County Jail, forfeit $13,000 cash and a fine of $3000?

A. I haven't talked to my lawyer since the letter was sent to him.

Q. But you know there's going to be a deal?

A. Yes.

Q. In exchange for that deal, its [*sic*] to testify?

A. Correct.

Q. Now, one of the cases—one of the charges that is going to be dismissed is calculated criminal conspiracy, isn't it? Both of those, they're going to be dismissed, right?

A. Yes.

Q. That's part of your deal. Now, you like that deal because you're aware that that's got a mandatory prison sentence, right?

A. No, I'm not aware of that.

Q. Doesn't surprise you, does it? Your lawyer hasn't told you that?"

At this point, the State's Attorney objected to questioning regarding a mandatory jail sentence. Counsel argued it would be improper to reveal the sentence for calculated criminal conspiracy because it was a charge facing the defendant. The court sustained the State's objection and disallowed any further reference to a mandatory prison sentence. The defendant maintains that the failure to allow evidence of the mandatory minimum jail sentence facing the accomplice constitutes reversible error.

■ The right to cross-examination of a witness regarding possible bias or motive is guaranteed by the Federal and State Constitutions. (*People v. Gonzalez* (1984), 104 Ill. 2d 332, 472 N.E.2d 417.) While a defendant should be given the widest possible latitude in cross-examining a State's witness, the form that latitude takes rests in the sound discretion of the trial court. (See *Gonzalez*, 104 Ill. 2d 332, 472 N.E.2d 417; *People v. Young* (1983), 118 Ill. App. 3d 803, 455 N.E.2d 845.) Any decision by the trial court regarding limitation of cross-examination will not be overturned upon review absent a showing of a

clear abuse of discretion resulting in a manifest prejudice. *Young*, 118 Ill. App. 3d 803, 455 N.E.2d 1368.

Here, the witness was asked on cross-examination whether the charges of calculated criminal conspiracy were to be dismissed as part of the plea agreement and whether those charges carried a mandatory prison sentence. The questioning concerned the same charges made against the defendant.

Contrary to the defendant's assertion, we find this issue controlled by our previous disposition in *People v. Lake* (1978), 61 Ill. App. 3d 428, 378 N.E.2d 364, which was reaffirmed in *People v. Gibson* (1983), 117 Ill. App. 3d 270, 452 N.E.2d 1368. In *Lake*, an accomplice testified on behalf of the prosecution. The accomplice explained that in return for his testimony, the State had agreed to reduce his burglary charge to a theft under $150 charge. During cross-examination, defense counsel attempted to inquire about the sentencing differences between burglary and theft under $150. (*Lake*, 61 Ill. App. 3d at 431, 378 N.E.2d at 366.) The court, however, precluded any inquiry regarding specific sentences. We determined that the trial court's limitation of cross-examination of an accomplice was proper to prevent disclosure of the potential sentence facing the defendant. *Lake*, 61 Ill. App. 3d at 431, 378 N.E.2d at 367; see also *People v. Portis* (1986), 147 Ill. App. 3d 917, 498 N.E.2d 675 (adopting the *Lake* concept that evidence of a specific penalty is immaterial and irrelevant to the jury's fact finding and may be restricted during cross-examination).

As in *Lake*, the defense counsel herein conducted an extensive inquiry into the nature of Johnson's plea arrangement with the State's Attorney. The specifics of the deal, including the dismissal of pending charges and the sentence offered, were acknowledged by Johnson on cross-examination. Only when counsel sought to introduce evidence of a specific sentence of the dismissed count was the State's objection sustained. The express rationale underlying the preclusion of such evidence was to prevent disclosure of the possible sentence facing the defendant, who had been similarly charged.

As we noted in *Lake*:

> "The jury is the trier of fact and has no duty, authority, or responsibility as to the sentence which may, or may not, be imposed. That is within the purview of the presiding judge solely. Not only is a possible penalty immaterial and irrelevant to the jury, but any reference to possible sentence may well prejudice the State's right to a fair trial—a right that is equally important to a defendant's right, and a right that is often forgotten

or neglected." (*Lake*, 61 Ill. App. 3d at 431, 378 N.E.2d at 367.)

Consequently, we find that in light of the substantial amount of evidence presented regarding Johnson's plea agreement and the wide latitude afforded the defense during cross-examination, the court was well within its discretion and the restraints imposed were reasonable.

■ Finally, the defendant claims the verdict forms were insufficient to justify his convictions where they failed to specify the weight of the drugs involved. Since the quantity of the drugs involved is an essential element of the offenses charged, the defendant maintains the absence of a specific finding of the requisite weight requires a reduction of his convictions to the lesser included offenses.

Alternatively, the defendant argues there was no evidence to support a finding of the requisite gram amount of drugs in support of his convictions. Our review of the evidence, however, indicates otherwise. There was testimony which indicated Johnson purchased four ounces of cocaine worth in excess of $7,000 in August of 1986 which was part of "20 to 30 ounces" received by Johnson from the defendant. There also was testimony that an ounce of cocaine was 28 grams.

Initially, the State asserts that the defendant has failed to preserve this issue for review. It is well established that any error which is not raised at the trial court level is deemed waived. Where a defendant fails to object to jury instructions during the instruction conference or at trial and fails to offer an alternative instruction, he waives any objection thereto. (*People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d 203.) In this case, the defendant did not object to the verdict forms tendered and did not offer any alternative verdict forms. Consequently, the defendant has waived this issue.

■ On the merits, however, there is no dispute that the specific amount of an illegal drug allegedly possessed is an essential element going to the substance of the offense. (*People v. Kadlec* (1974), 21 Ill. App. 3d 289, 313 N.E.2d 522.) As such, the gram amount constitutes an issue which must be specifically presented to the jury. (*Kadlec*, 21 Ill. App. 3d 289, 313 N.E.2d 522.) Where, however, the jury instructions specifically inform the jury of the requisite gram amounts of contraband, the verdict forms need not reiterate that specific gram amount. (*People v. Yettke* (1981), 95 Ill. App. 3d 365, 420 N.E.2d 194.) If the jury instructions properly inform the jury of all the material elements of the offenses charged, there is no error in submitting a general verdict form. *Yettke*, 95 Ill. App. 3d 365, 420 N.E.2d 194.

■ The jury instructions given included the gram amounts of cocaine which were required to find the defendant guilty of delivery of

cocaine in excess of 30 grams and calculated criminal drug conspiracy. Consequently, there was no error in submitting verdict forms which did not reiterate a requisite amount of cocaine to support a conviction.

Based on the foregoing, the judgment of the circuit court of Ford County is affirmed.

Affirmed.

GREEN, P.J., and SPITZ, J., concur.