THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES W. BREWER, Defendant-Appellant.

Third District   No. 3—91—0476

Opinion filed June 9, 1993.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellant.

Larry VanDerSnick, State's Attorney, of Cambridge (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

A jury convicted the defendant, James W. Brewer, of three counts of armed violence, three counts of armed robbery, two counts of disarming a peace officer, two counts of aggravated kidnapping, one count of home invasion, and one count of attempted aggravated kidnapping. He was thereafter sentenced as an habitual criminal to life imprisonment. He appeals, and we affirm.

The record shows that the defendant, along with three other men, committed an armed robbery of a jewelry store in Davenport, Iowa, on October 19, 1989. The four men were from Indianapolis, and after the robbery, they headed back to that city. Outside of Atkinson, Illinois, two State Police officers spotted the suspects' vehicle. The vehicle then exited the highway and entered a service station. The officers followed the car, and when three of the men exited it, they approached them. The officers were apparently unaware that codefendant Nathan Alexander was still in the car.

Alexander then exited the car with an Uzi semiautomatic weapon. He proceeded to disarm the officers, and the four men then left the service station with the officers' weapons. They drove to a supermarket parking lot in order to find a car to steal and a white person to drive them. When they saw Lynette Hull getting out of a van, they approached her, took her keys, and told her she was going with them. However, she managed to escape, and while she ran into the store, the men drove away in her van.

The men then drove around looking for another vehicle to steal. Eventually, they saw a van in a garage at the residence of Kim Verstraete. The men, armed with a gun, knocked at the door of the home and when Kim answered it, they entered her home without permission. They then forced her and her three-year-old son to accompany them to Chicago. Once in Chicago, they released her and her son.

Other evidence showed that codefendant Bruce Richardson testified against the defendant. He admitted that he faced the same charges as the defendant, and that he agreed to plead guilty and testify against the defendant in exchange for a recommendation by the State that he receive only a 20-year term of imprisonment. Defense counsel wanted to cross-examine Richardson regarding the fact that he faced a potential sentence of up to 90 years. However, the trial court refused to allow such cross-examination because it would also inform the jury of the potential sentence facing the defendant. As such, defense counsel was only allowed to ask Richardson if he knew

he could get substantially more time than the 20 years of imprisonment he received. Richardson acknowledged that fact.

Richardson also testified that he had prior felony convictions for robbery and auto theft and a misdemeanor conviction for possession of stolen property. Other evidence presented to the jury showed that Richardson once identified himself to the police as the defendant, and that he and the defendant got into a heated argument over the incident. Richardson also threatened to "get" the defendant and "take care" of him.

Codefendant Mevester Lyles also testified against the defendant in exchange for a plea agreement with the State. Defense counsel was once again precluded from eliciting the fact that Lyles faced a potential sentence of up to 90 years. However, evidence was presented showing that Lyles had two prior felony theft convictions and that he had been found guilty of a number of the same offenses the defendant faced in the instant case.

On appeal, the defendant first argues that the trial court erred in limiting his cross-examination of Richardson and Lyles. Specifically, he contends that the failure to allow evidence of the possible prison sentence facing the codefendants constituted reversible error.

The right to cross-examination of a witness regarding possible bias or motive is guaranteed by the Federal and State constitutions. (*People v. Gonzalez* (1984), 104 Ill. 2d 332, 472 N.E.2d 417.) While a defendant should be given the widest possible latitude in cross-examining a State's witness, the form that latitude takes rests in the sound discretion of the trial court. Any decision by the trial court regarding limitation of cross-examination will not be overturned upon review absent a showing of a clear abuse of discretion resulting in manifest prejudice. *People v. Roy* (1988), 172 Ill. App. 3d 16, 526 N.E.2d 204.

■ Case law also establishes that the trial court may properly preclude any inquiry regarding specific sentences of an accomplice witness when such disclosure would also reveal the potential sentence facing the defendant. The purpose of preventing disclosure of the potential sentence facing the defendant is that such evidence is irrelevant to the jury and could possibly prejudice the State's right to a fair trial. *People v. Lake* (1978), 61 Ill. App. 3d 428, 378 N.E.2d 364; *People v. Portis* (1986), 147 Ill. App. 3d 917, 498 N.E.2d 675; *People v. Roy* (1988), 172 Ill. App. 3d 16, 526 N.E.2d 204.

Contrary to the foregoing, the defendant asks this court to follow its decision in *People v. Graves* (1977), 54 Ill. App. 3d 1027, 370 N.E.2d 1219. In *Graves*, we found that the potential sentence facing an accomplice witness could be revealed even though it would also re-

veal to the jury the sentence facing the defendant. However, we note that in *Graves,* unlike in the instant case, the defendant was apparently unable to elicit *any* testimony regarding the accomplice's plea agreement with the State.

We also note that while a defendant's objective in eliciting sentencing information is to show the accomplice's bias, this is not an unlimited right and must be balanced with other competing interests. Therefore, in light of *Lake, Portis,* and *Roy,* we decline to follow *Graves* to the extent that it may conflict with these decisions. We now hold that a trial court may properly preclude such evidence in cases where the record shows that the defendant was able to conduct an extensive inquiry into the nature of the plea agreement with the State.

■ In the case at hand, the record shows that the defendant was able to elicit considerable evidence regarding the plea agreements and possible biases of Richardson and Lyle. The defendant was allowed to introduce evidence showing that the codefendants received deals in exchange for their testimony and that they received substantially less time than they might have had they not agreed to the deals. In addition, evidence was introduced showing that Richardson may have had a grudge against the defendant and was out to "get" him.

Consequently, we find that in light of the substantial amount of evidence presented regarding the plea agreements and the wide latitude afforded the defense during cross-examination to elicit other evidence of possible bias, the trial court did not abuse its discretion in precluding evidence regarding specific sentences.

The defendant next argues that the trial court committed reversible error in allowing a witness to testify about a gun the defendant left at the witness' home. Specifically, he alleges that the State failed to show a connection between that gun and the gun taken from one of the officers.

The record shows that the defendant was charged with disarming a police officer. Both officers Daniel Wisdom and Robert DeLaRosa identified the defendant as one of the men present when their weapons were taken from them. Officer Wisdom's weapon was later recovered, but Officer DeLaRosa's weapon was not. DeLaRosa described his weapon as a nine-millimeter Smith and Wesson semiautomatic that had a black rubber grip on the handle. Richardson also testified that the defendant had one of the officers' guns in his possession.

The defendant's cousin, Andrew Mumford, testified that on the evening of October 30 or 31, 1989, he received a call from the defendant saying that he needed his pistol. Mumford stated that he did not know what gun the defendant was talking about. However, after

searching his house he found a gun. He described it as a regular handgun that had a black handle. He did not give the gun to the defendant. Instead, he threw it into the White River. Mumford noted that he knows nothing about guns, which accounted for his inability to describe the gun in detail.

The defendant objected at trial to the admission of Mumford's testimony. On appeal, he argues that the evidence regarding the gun was irrelevant since the State failed to show a connection between the gun disposed of and the gun taken from DeLaRosa.

The basic principle that animates our law of evidence is that what is relevant is admissible. Relevant evidence means evidence having any tendency to make the existence of any fact in issue more probable than it would be without the evidence. (*People v. Monroe* (1977), 66 Ill. 2d 317, 362 N.E.2d 295.) Evidentiary rulings lie within the discretion of the trial judge and will not be disturbed on review absent an abuse of that discretion. *People v. Boclair* (1989), 129 Ill. 2d 458, 544 N.E.2d 715.

■ In the case at hand, we note that the evidence was admissible because it tended to prove that the defendant had possessed DeLaRosa's gun. Here, Richardson testified that the defendant had possessed one of the officers' guns. DeLaRosa testified that the defendant was present when his gun was taken. The evidence also showed that the gun was never recovered. Mumford's testimony therefore tended to make it more probable that the defendant had possessed the gun in question.

While the evidence connecting the defendant to the gun and the crime may have been tenuous, such facts go to the weight of the evidence, not its admissibility. Therefore, we cannot say that the trial court abused its discretion in admitting Mumford's testimony into evidence.

The defendant's last argument on appeal is that the trial court erred in excluding the testimony of a witness whose testimony tended to show the bias of Richardson. The record shows that the defendant offered the testimony of Keith Graves, who would testify that the defendant and a man named Bruce came to his house on October 20 or 21, 1989, to see if Graves wanted to buy some merchandise.

The defendant argued that this testimony was relevant since it corroborated the testimony of another defense witness regarding Richardson's bias against the defendant. That witness had testified that a man named Bruce wanted the defendant to sell some merchandise for him and that Bruce had become angry with the defendant and threatened to "get" him.

On appeal, the State correctly notes that this issue has been waived because the defendant failed to include it in his motion for a new trial. In his reply brief, the defendant contends that even if the matter was waived, this court should consider it as plain error pursuant to Supreme Court Rule 615(a). 134 Ill. 2d R. 615(a).

Plain error is restricted to the correction of grave errors or to situations where the case is close factually and fundamental fairness requires a new trial. *People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.

■ Our review of the record in the instant case reveals that the evidence was not close. Two of the defendant's accomplices testified that the defendant participated in the crimes committed. Additionally, Officers Wisdom and DeLaRosa each identified the defendant as being one of the four men involved in the incident at the service station at which they were disarmed. Finally, the evidence showed that the defendant's fingerprint was found inside a vehicle used during the commission of the offense.

We also find that no reversible error was committed since other evidence was presented showing the bias of Richardson. In this regard, we note that the jury was presented with evidence of his plea agreement with the State. In addition, evidence was presented showing that he and the defendant had a heated argument in the past and that Richardson was out to "get" the defendant.

Therefore, since the evidence was not close and no reversible error was committed, we decline to find that the trial court's alleged error amounted to plain error.

Accordingly, the judgment of the circuit court of Henry County is affirmed.

Affirmed.

McCUSKEY, P.J., and BARRY, J., concur.