**People of the State of Illinois, Plaintiff-Appellee,
v. Charles Davis, Defendant-Appellant.**

**Gen. No. 52,256.**

First District, Second Division.

March 11, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

Charles Davis was charged in a two-count indictment with the murder of Lorraine Perkins. After a plea of not guilty, a jury found the defendant guilty as charged, and he was sentenced to the penitentiary for a term of not less than 14 nor more than 25 years.

Joseph Leonard Perkins, son of the victim, was 13 years old, and attended high school. He testified as follows: On October 2, 1965, at about 5:45 p. m., he was lying on the bed reading in his home at 4300 South Ellis Avenue, and his mother was talking on the telephone in the other room. Charles Davis, the defendant, came into the bedroom and picked up a butcher knife from the mantel. Joseph's mother came to the bedroom door; the defendant approached her; she turned and the defendant followed her out toward the entrance door; Joseph followed them both and saw the defendant stab his mother in the back, then go out the door, taking the knife with him. He stated that nothing was said by any of them during this time, and that he then went

to the desk clerk of the apartment hotel and asked him to call the police.

Joseph testified that he had known the defendant for about two years; that he had seen him in the apartment before, but that the defendant did not live there. He stated that he got along fine with the defendant; that he did not see him bring the knife into the apartment, but assumed it belonged to defendant since it did not belong to Joseph or his mother.

The testimony of defendant is in direct conflict with that of Joseph Perkins. The defendant testified that he had known Mrs. Perkins since 1957, that he saw her every day, and had stayed all night with her on Saturday, October 1; that he lived with her. He testified that on Sunday morning some friends, the Browns, came in with whisky, beer and wine, and that they all drank; that at noon they all went to the Browns' apartment where they stayed and drank until around 5:00 p. m., when Mrs. Perkins, Brown and the defendant went to her apartment building. The defendant and Mrs. Perkins argued about his coming upstairs, and Mrs. Perkins insisted that he come to her apartment. The boy, Joseph, then came in and the defendant started to leave, at which time Mrs. Perkins "got excited" and started swearing at him and told her son to leave. When the defendant again started to leave, Mrs. Perkins hit him on the head with a bottle; she grabbed another bottle and hit him on the neck; he grabbed at her and twisted her around, and she took a knife from the refrigerator and hit him with it. While he was holding her around the waist and they were scuffling she asked him to turn her loose, that she had cut herself. He released her after she threw the knife down, and he tried to stop the bleeding of her hand. She told him to leave, that she was going to call the police and did not want him there because they had been arrested before. Defendant left,

164

returned after about 15 minutes, and saw that she had cleaned up the house. He left again, and after a half hour he telephoned the hotel and learned that Mrs. Perkins was dead. He then went to Fort Wayne, Indiana, where he was apprehended and brought back to Chicago. He denied intentionally stabbing Lorraine Perkins.

■■  In this court defendant contends: 1) that he was not proved guilty beyond reasonable doubt; and 2) that the sentence should be reduced. His first argument is with reference to the testimony of Joseph Perkins. The Illinois rule pertaining to the testimony of a child under the age of 14 years is that where an objection is imposed to the competency of a child the question is a matter resting largely in the discretion of the trial court. People v. Watkins, 405 Ill 454, 91 NE2d 406. The intelligence and understanding of a child witness are the controlling factor as to competency, and not the age. People v. Tappin, 28 Ill2d 95, 190 NE2d 806. In the case before us no objection was made as to Joseph Perkins' testimony.

In Knab v. Alden's Irving Park, Inc., 49 Ill App2d 371, 199 NE2d 815, the court said at page 384:

> "In all cases the trial court must determine finally, upon all circumstances, whether the child is competent to testify. 2 Wigmore, Evidence § 507 (3d ed). The trial court must also determine what degree of necessity exists as to whether or not the child's testimony should be placed before the jury."

In the Knab case the court cited and quoted from an article entitled The Problem of the Child Witness, 10 Wyo L Rev 214 221, 222 (1956), where it was stated:

> "The trend toward relaxation of the rules governing the competency of child witnesses demonstrates a growing appreciation by the courts of the fact that in many instances the testimony of a child is practically indispensable. . . ."

165

In evaluating the testimony of Joseph Perkins, even the cold record clearly indicates that he was a competent witness. Under the circumstances, no preliminary examination of Joseph by the court was necessary.

The defendant also raises the argument that the evidence of Joseph Perkins is unbelievable, basing it on the fact that Joseph testified that the defendant stabbed his mother without any argument or any words whatsoever being exchanged between them. The defendant had testified concerning the drinking bout in the morning at the home of the deceased and the continued drinking in the afternoon at the Browns. There is no testimony in the record as to what occurred at those meeings, whether there was any quarreling between defendant and the deceased.

■■ Defendant argues that it is improbable, impossible and unbelievable that without any words and without any provocation he stabbed the deceased, yet the defendant would have this court believe that without any provocation, the deceased engaged in a violent dispute with the defendant, hit him over the head with a bottle, immediately afterwards again hit him with another bottle, and—according to defendant's testimony— seized a knife. Either of these accounts appears incomprehensible unless we knew what had occurred between the defendant and the deceased during the entire day. All of that information is not in evidence, and the matter of assessing the credibility of the conflicting accounts is one for the jury to determine. Based on the record we cannot say that the jury acted unreasonably in choosing to believe Joseph's testimony instead of the defendant's. Joseph Perkins' testimony was clear and consistent that after the deceased was stabbed and fell to the floor he immediately went downstairs to call the police; that when he returned to the apartment he found his mother lying on her stomach, bleeding; that she said nothing to him, and the police arrived at once.

On the other hand, the defendant testified that after the stabbing he took an old dress, wet it with cold water and tied it around the wound, stating that the deceased was wounded under her arm. He stated that she told him to get out, that she was going to call the police, and he left. According to his testimony he returned about 15 minutes later and found that "she had cleaned the house up cleaner than a speck." He was questioned as follows:

"Q. What happened then?
"A. So, I said, aren't you going to the doctor yet? She was supposed to go to the doctor. Call the police to take her to the doctor, at least, and she hasn't gone. She said, you get out of here. I know what I am doing. Leave this to me. So, she said, you get me nervous, so I went back out the door. . . . I went to 44th, and from 44th over to South Park and I went to 55th and Indiana. . . ."

The defendant stated that he called the apartment a half hour later and was told by the switchboard operator that Mrs. Perkins was dead. The defendant then left for Fort Wayne, Indiana, since, as he said, he knew he was a convict and was afraid to become involved.

The testimony of Joseph Perkins indicates that the police arrived immediately after he called them.

Dr. Edward H. Malters testified that he was senior consultant in forensic medicine for the Coroner's Office; that the cause of death of Lorraine Perkins was a stab wound to the left lung, with internal hemorrhaging; that the wound was four to six inches in length.

In his argument counsel for defendant talks about the unbelievable testimony of Joseph Perkins, and yet the defendant's story is that after this woman had received a stab wound such as has been described, she got up, cleaned up the house, and was standing at the time he

returned 15 minutes after the stabbing. No great amount of medical training is required in order to deduce that such a wound would not permit action of that character.

Furthermore, counsel for defendant criticizes the failure of the State to call the Browns as witnesses. We think the criticism should be directed to the defense, since, according to defendant's testimony, Brown's statement would have corroborated defendant's version of the incidents. According to the defendant, Brown had come with him and the deceased to the latter's apartment, but had refused to go in and had remained outside on the street. Defendant testified that Joseph Perkins had been directed by his mother to go out on the street, which he did, and according to the defendant, Joseph was outside at the time the incident in question occurred. Brown —a friend of the defendant—could have testified as to the whereabouts of Joseph and could have testified as to whether Joseph had gone into the street as testified to by the defendant. Brown could also have testified as to his own whereabouts during this period.

Defendant testified that he had been in the Illinois State Penitentiary for a term of one year to life, having been convicted in 1940 of the offense of armed robbery; that he was later paroled and released in 1949; that he was arrested in 1951 for taking a car from his place of employment, and sentenced to a term of two to five years; that he had served three years and nine months at Stateville Prison, and was released in 1956. It was because of this series of arrests that he left for Fort Wayne, Indiana, when he learned of the death of Lorraine Perkins, where he stayed until he was arrested, and waived extradition.

It is not necessary to cite authority to support the rule that conviction of an infamous crime can be considered by the trier of fact in determining the truthfulness of testimony. Also, it is not necessary to cite

168

authority to support the rule that immediate flight after the commission of a crime may also be considered as evidence supporting guilt of a defendant. It is the function of the trier of fact to determine the credibility of witnesses and the weight to be given their testimony; and where the evidence is merely conflicting, the reviewing court will not substitute its judgment for that of the trier of fact. People v. Henderson, 33 Ill2d 225, 210 NE2d 483; People v. Anderson, 30 Ill2d 413, 197 NE2d 24. Where the evidence is conflicting, the credibility of witnesses and the weight of their testimony are questions for the jury. People v. Hoffman, 62 Ill App2d 267, 210 NE2d 573.

In People v. Garcia, 95 Ill App2d 34, 238 NE2d 87, the defendant contended that where conflicting facts may be explained on the hypothesis of innocence as well as a theory of guilt, it is the duty of the court to accept the explanation. The court said at page 37:

> "The mere fact that the defendant's story conflicts with that of the prosecution witnesses does not require application of the 'hypothesis of innocence' doctrine."

In the instant case the question of the truth of the matters testified to and the credibility of the witness was a matter for the trier of fact, and from a careful examination of the record, we cannot accept the view that the defendant was not proved guilty of murder beyond a reasonable doubt.

Defendant's argument that the accusation should have been for manslaughter and the sentence consequently reduced, is untenable. The judgment of the Circuit Court is affirmed.

Affirmed.

LYONS, P. J. and BURKE, J., concur.