THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOSEPH RAMOS, Defendant-Appellant.

First District (3rd Division)   Nos. 78-200, 78-1935 cons.

Opinion filed January 30, 1980.

Ralph Ruebner and Susan Bandes, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Pamela L. Gray, Assistant State's Attorneys, of counsel), and Barry A. Gross, law student, for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Joseph Ramos, was charged with the murder of Vincente Tavizone. A jury found him guilty of that crime and the court sentenced him to 14 to 25 years. On appeal defendant contends that he was not proved guilty beyond a reasonable doubt, and that the trial court committed reversible error in denying his motion for a new trial, thus preventing newly discovered evidence from being introduced.

On the evening of September 24, 1976, the decedent was shot to death in a tavern located at 1461 West Irving Park Road in Chicago. Ms. Estella Cuevas, a bartender, was the only employee on duty at the time. Cuevas testified that defendant, the former owner of the tavern and her former employer, was seated at the bar. Two patrons, one of whom was

decedent, began quarreling and shoving each other. Defendant summoned one of the two men to the bar and talked to him. After the conversation with defendant, however, the man resumed the quarrel with decedent. Cuevas testified that defendant left the bar and walked to the scene of the argument. He grabbed decedent by the neck and drew a gun; she testified on cross-examination that defendant grabbed decedent by the collar of his T-shirt; and at the preliminary hearing she stated that defendant grabbed decedent by the arm. Cuevas further testified that defendant struck decedent across the head with the butt end of the gun three times. Before the third blow was struck, decedent was covering his face with his hands and was bent over near the front door of the tavern. She heard a shot fired and saw defendant with the gun in his hand. At first Cuevas could not see the decedent after the shot was fired because her vision of the floor where he was outstretched was blocked by the bar. She then saw decedent lying face down in a pool of blood a few feet from the front door. Defendant was bent over decedent. Defendant left the tavern, carrying the gun in his hand.

Cuevas was about 15 feet from the occurrence, and approximately 11 patrons were watching the altercation. Cuevas was in the middle of the bar and, although she was serving drinks, she had a view of the entire incident. She testified on cross-examination that she had stated at the preliminary hearing she had her back to the scene and was serving drinks when she heard the shot. She also testified that she did not remember whether decedent was with anyone in the tavern; it was stipulated she had informed the police that decedent entered the tavern with three or four other men.

A police officer testified that he arrested defendant eight days later. At the time defendant was carrying a nine-millimeter gun on his person. Tests revealed that the spent bullet and cartridge recovered in the tavern after the killing were fired from such a gun and bore the same characteristics as bullets which were test-fired using the gun recovered from defendant. Decedent died from bullet wounds to the head which penetrated the brain.

Defendant testified that when he saw the two men scuffling, he attempted to calm them down. One of the men told defendant to mind his own business and grabbed his arm. The man pushed defendant against the wall, and defendant observed a third man standing with a gun in his hand. It was only then that defendant drew his gun which was properly registered with the authorities. The man who had pushed defendant swung his fist, and defendant struck the man with his gun. The man came toward defendant again, and defendant struck him on the head with the gun. When the man attacked again, defendant struck him with the gun a third time. The third man holding a gun had done nothing, but it

appeared to defendant that his attacker was going to reach for the other man's gun. Defendant did not know whether his gun discharged; he did not hear a shot. Defendant left the tavern after striking the man with his gun three times.

We find no merit in defendant's initial contention that he was not proved guilty of murder beyond a reasonable doubt. Cuevas saw defendant strike the decedent three times with a gun, saw the decedent cover his face with his hands, and heard a gun fired. Although Cuevas did not see the actual shot fired, she saw defendant immediately after the shot, bent over decedent with a gun in his hands. Moreover, evidence was adduced that decedent was killed by a nine-millimeter gun, the same kind of weapon recovered from defendant's person. In contrast, defendant did not know whether his gun had discharged and did not hear a shot fired. Nor did he see the face of the man he stated also was holding a gun. The credibility of witnesses and the conflicts in the evidence, including discrepancies and inconsistencies, were matters for the jury to decide, and their resolution of those issues in the present case is amply supported by the evidence. (See *People v. Davis* (1969), 107 Ill. App. 2d 162, 246 N.E.2d 83.) While defendant maintains that Cuevas' testimony was vague, doubtful and uncertain, our examination of the record reveals that she was a credible witness with an ample opportunity to observe the entire incident.

■■ Defendant also has suggested that his conduct constituted proper self-defense or, in the alternative, that he should be guilty of voluntary manslaughter only. As we view the evidence, however, it reveals that defendant shot and killed an unarmed and defenseless man after battering him with the butt end of the gun. There was strong evidence that defendant was the aggressor, and it was sufficient to support a conviction. Defendant was proved guilty of murder beyond a reasonable doubt.

Defendant next contends that the trial court committed reversible error in denying his motion for a new trial. The basis of the motion for a new trial was defendant's claim of newly discovered evidence.

Attached to the motion was the affidavit of Francisco Barraza. He stated that on the evening of September 24, 1976, he was present at the tavern in question. Barraza saw defendant but did not talk to him. He saw the fight start and then observed defendant standing near the front door of the tavern among a group of six to eight men. Barraza saw an unknown individual in the group with a gun in his hand; he saw another unknown individual reaching for something, as if he were reaching for a weapon. Barraza left the tavern at that time. While waiting for a taxi, he heard a gunshot and observed people running from the tavern. Barraza stated that

he went to his native Mexico during the latter part of December 1976, and returned to Chicago on May 20, 1977.

The affidavit recited that it was translated from Spanish to English by Gilbert Ramos. During argument on the motion, the prosecutor informed the trial court that Gilbert Ramos was defendant's brother. The prosecutor also pointed out that, despite the fact Barraza was unable to read or understand English, the affidavit bore his signature. The present trial began three days after Barraza's return to Chicago on May 20, 1977.

In order to entitle defendant to a new trial, newly discovered evidence must meet the following standards: it must be conclusive and likely to change the result upon retrial; it must be material and noncumulative; it must have been discovered after the trial; and it must be of such a character that it could not have been discovered before trial by the exercise of due diligence. (*People v. Whittaker* (1978), 56 Ill. App. 3d 430, 373 N.E.2d 30.) Applications for a new trial on the basis of newly discovered evidence are largely discretionary with the trial court, and its exercise of discretion will be disturbed only when manifestly abused. (*People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.) Such applications are not looked on with favor, and they should be subjected to the closest scrutiny by the court. *People v. Reese.*

■■ The affidavit and its attendant circumstances contain several infirmities. We shall comment only on one of them. The affidavit merely recites that Barraza saw a man in the tavern with a gun and saw another person turn toward the armed man as though reaching for the gun. The affiant then departed; he did not witness the shooting. The proposed evidence was not new, but cumulative, since defendant had testified that another person was holding a gun. It could not be categorized as conclusive on any issue or likely to alter the result. In view of the nature of the proposed evidence, the trial court acted properly and well within its discretion in denying defendant's motion for a new trial.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

McGILLICUDDY, P. J., and RIZZI, J., concur.