THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SIDNEY PORTIS, Defendant-Appellant.

First District (1st Division)   No. 84—1740

Opinion filed September 22, 1986.

Steven Clark and Richard F. Faust, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Christopher J. Cummings, and Joan E. Disis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Sidney Portis, was charged by indictment with the offense of murder, armed robbery, and armed violence in violation of sections 9—1(a), 18—2 and 33A—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a), 18—2, 33A—2). Also charged in the same indictment was Joseph Gardener, whose case was subsequently severed from the defendant's. Following a jury trial, the defendant was found guilty of armed robbery and murder. The defendant waived his right to a jury during the sentencing phase, and while the State had sought the death penalty, the trial court found the defendant ineligible. The trial court then imposed concurrent terms of imprisonment: 75 years' for murder and 15 years' for armed robbery. This appeal followed.

The charges arose out of an armed robbery planned and perpetrated by the defendant, Joseph Gardener and Anthony Baker, during which the victim, Jasper Taylor, was fatally shot. Gardener negotiated a plea agreement with the State, so his case was severed from the defendant's. Baker also negotiated an agreement and was not charged.

In this appeal, the defendant contends that the trial court committed the following errors: (1) refused to grant a new trial on the basis of newly discovered evidence; (2) imposed an excessive 75-year sentence, which was grossly disproportionate to that received by one of his accomplices; (3) prevented defense counsel from cross-examining one accomplice as to his knowledge of the penalties for murder; (4)

denied defendant's motion for a mistrial after the State improperly introduced evidence of gang membership; and (5) permitted prospective jurors to be "death qualified" pursuant to *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, which resulted in the selection of a conviction-prone jury.

We affirm.

Keith Brunt, an acquaintance of the defendant, testified for the State and said that on October 19,1982, he accompanied his uncle to a construction site at Tripp and Harrison streets in Chicago where his uncle went to see the victim, Jasper Taylor, who owed him money. Taylor, a full-time minister and part-time builder, was in charge of the construction site at Tripp and Harrison. Brunt said his uncle told him that the victim was paying his workers that day and was carrying approximately $8,000 in cash. Brunt, himself, observed that the victim carried what appeared to be a large amount of cash in white envelopes in his back pocket.

Later that day, Brunt went to the home of Joseph Gardener, where he found Gardener and the defendant, Sidney Portis, sitting on the porch. Brunt told Gardener and Portis that he knew of a construction site where a man had $8,000, and Brunt wanted help to rob the man. Brunt testified that Portis said that $15,000 or $20,000 would be worth killing for, but Gardener told Brunt that he and Portis were unable to help him so Brunt departed.

The State also called Joseph Gardener as a witness, and he corroborated Brunt's version of their conversation with the defendant. Gardener testified that after Brunt left the defendant began insisting that they go "check it out." Gardener said that he finally succumbed to the defendant's pressure, and the two walked over to the construction site. Upon arriving at Harrison and Tripp, the two saw the victim with the envelopes in his pocket and thereafter agreed to get some guns and rob the victim. Gardener testified that the defendant stated that he would kill the victim because the victim knew the defendant knew he had the money on him. Gardener said he obtained a .32 revolver and that the defendant obtained a .25 automatic.

Anthony Baker also testified for the State. Baker said he was playing with his son at the corner of Kilbourn and Congress Parkway on October 29, when the defendant approached and asked if Baker wanted to make some easy money. Baker gave his son to Sharon Gulley and followed the defendant. Gardener joined Baker and Portis, and the three proceeded to cross over the Eisenhower Expressway. Baker testified that the defendant took out a .25 automatic, cocked it, and put it in the front of his pants. Baker said he slowed his pace

when he saw the gun. He stated that, until that time, he did not know guns would be involved. When they reached the construction site, a man on a bulldozer asked the three for the time, and Baker told him the time. Ben Agee, who later testified, was working on the bulldozer at the site on October 29, and he said that three men approached him on that day, but he could not identify the men because of his poor eyesight. He did state that he asked them for the time, and that one of the men replied with the time. Shortly thereafter, Agee said he heard shots.

Baker testified that Gardener and the defendant approached the victim. Gardener stood in front of the victim; the defendant stood behind the victim. Both Baker and Gardener testified that the defendant stood 2 feet behind the victim and fired two shots into the victim's back. Baker stated that he then turned and began to run back across the expressway. The victim fell to the ground and, according to Gardener, said, "Don't kill me. Here's the money. Take it." Gardener said that the defendant picked up the envelopes containing the money, but Gardener testified that the defendant, nevertheless, shot the victim about four more times. After seeing the defendant shoot the victim so many times, Gardener said he became frightened that the defendant might shoot him if he did not shoot so he fired his weapon once at the victim.

Baker said he heard several shots as he ran. He testified that he looked back and saw Gardener and Portis crossing the expressway. Baker stated he also saw two white envelopes fall from defendant's hand and that the defendant picked up the envelopes and stuffed them into his pants.

Gardener also testified that the defendant gave him a sealed white envelope which Gardener took to his fiancee, Rosemary Gary. He claimed he did not open it but that he gave it to his fiancee because he was due to report to a work-release center where he was living because of a previous theft conviction and did not want the money on his person. Rosemary Gary corroborated this portion of Gardener's testimony. She also testified that the defendant appeared at her apartment the following day and demanded the envelope. She said she gave it to him.

An autopsy revealed that the victim suffered six gunshot wounds, five of which could have caused his death. Five bullets were removed from the victim, and additionally, the police recovered five .25-caliber shell casings and two bullet fragments from the scene. Neither weapon was recovered. A firearms examiner testified the five bullets removed from the victim and one of the two fragments recovered

from the scene came from a .25-caliber gun. He stated that the other fragment recovered from the scene came from a .32-caliber weapon. The examiner also stated that it was possible that the .25-caliber casings and the .25-caliber bullets could have come from the same gun, but a conclusive determination could not be made without the gun.

At the conclusion of the trial, the jury found the defendant guilty of both armed robbery and murder. Later the defendant filed a motion for a new trial contending, *inter alia*, that the State used perjured testimony, *i.e.*, that both Gardener and Baker lied when each testified that the defendant carried and used a .25 automatic to do the shooting during the armed robbery. To support his contention, the defendant presented the testimony of three witnesses: Eileen Johnson, Albert Holmes, and Laroy Muskin. Eileen Johnson testified that Joseph Gardener appeared at her apartment on the day of the shooting looking for her husband. Johnson said that Gardener pushed his way into her apartment, and that he had an open white envelope containing a lot of money in his hand. She said Gardener told her that he, accompanied by Baker and the defendant, had just robbed a man across the expressway and showed her a gun which he said he had to pull on the victim. Johnson admitted on cross-examination, however, that Gardener did not say that he shot the victim. She testified that Gardener gave her $100 and left his gun. When Johnson was shown both a revolver and an automatic pistol during her testimony, she said that Gardener's gun resembled the automatic. Johnson further stated that she wrapped the gun in a towel and gave it to a man she identified as Allen who drove an old bronze or tan Cadillac. She identified Allen Spane in court as that man. Johnson testified that she did not come forward and testify earlier because she had received death threats. She changed her mind when her mother-in-law, a friend of defendant's mother, told her that the defendant was not getting a "right deal."

The two other witnesses called by the defense were Albert Holmes, a corporal in the United States Marine Corps, and Laroy Muskin. Both testified about their conversation with Baker about two weeks after the shooting. They said that Baker indicated that the defendant was not armed during the robbery, but that he and Gardener were. However, their testimony was not entirely consistent because Holmes testified that Baker said that the defendant picked up the money, and Muskin said Baker picked it up. Furthermore, when asked, Holmes' only reason, he stated, for not coming forward with this information earlier was because he did not think it was anyone's business.

The State called one witness in rebuttal, Allen Spane, to whom Johnson claimed she had given Gardener's gun. Spane testified that he owned a 1973 gold Cadillac, but he denied that he ever received a gun from Johnson.

At the conclusion of the hearing, the court denied defendant's motion for a new trial, and the defendant then waived his right to a jury during the sentencing phase of the trial. Subsequently, after a hearing, the trial judge ruled that the defendant was ineligible for the death penalty because the new evidence created serious conflicts as to who fired the shots causing the victim's death. However, even though the State failed to sustain its burden in establishing the defendant's eligibility for the death penalty, the court still believed that the defendant had continued to shoot the victim after the victim had pleaded for his life, and then sentenced the defendant to concurrent 75- and 15-year terms for murder and armed robbery as indicated above.

■ The defendant first contends that the trial court abused its discretion when it refused to grant him a new trial. He asserts that newly discovered evidence, *i.e.*, the testimony of Johnson, Holmes, and Muskin portrays the defendant as "merely an unarmed bystander," and it contradicts the testimony of defendant's accomplices who had made deals with the prosecution. Thus, the defendant argues that the jury might believe this new evidence which indicates that Baker, who was not charged, and Gardener, who had also negotiated an agreement, carried the guns during the robbery and that the defendant was unarmed. Thus, the jury might very well have exercised leniency, he argues, and acquitted the defendant in much the same way that the prosecutor exercised leniency in not charging Baker for his involvement.

The State contends that the defendant's argument is irrelevant, without foundation, and that the evidence proffered by the defendant is insufficient to satisfy the standard for granting a new trial based on newly discovered evidence. Additionally, the State notes that the new evidence failed to negate defendant's presence at and complicity in the armed robbery and murder.

The decision to grant or deny a motion for a new trial based upon newly discovered evidence is a matter within the discretion of the trial court, and a court of review will not disturb that decision without a showing of manifest abuse. (*People v. Ramos* (1980), 80 Ill. App. 3d 722, 400 N.E.2d 676.) Courts look upon such a motion with disfavor and subject it to close scrutiny (*People v. Nolden* (1980), 91 Ill. App. 3d 532, 414 N.E.2d 1124), because of its potential use by a los-

ing party to practice fraud in a last-ditch effort to avoid the consequence of an adverse verdict. *People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.

■ Our supreme court set forth the standard for determining whether new evidence requires a new trial in *People v. Molstad* (1984), 101 Ill. 2d 128, 134, 461 N.E.2d 398, quoting *People v. Baker* (1959), 16 Ill. 2d 364, 374, 158 N.E.2d 1:

> " 'To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence.' "

(See also *People v. Kellick* (1984), 102 Ill. 2d 162, 464 N.E.2d 1037.) Thus, the movant must not only demonstrate that he has exercised due diligence but must also rebut the presumption that the verdict was correct. *People v. Dunklin* (1982), 104 Ill. App. 3d 685, 432 N.E.2d 1323.

Here, the essence of the testimony presented by the defendant is that the defendant was not armed during the robbery and did not fire the fatal shots. While such evidence is relevant to the issue of whether the defendant was eligible for the death penalty (see Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(6)), it does not exculpate the defendant from either the charge of armed robbery or murder (see *People v. Hickman* (1974), 59 Ill. 2d 79, 319 N.E.2d 511, *cert. denied* (1975), 421 U.S. 913, 43 L. Ed. 2d 779, 95 S. Ct. 1571).

■ It is well settled that if several conspire to commit a robbery or other criminal act, and someone is killed during the commission of that act, all are guilty of murder. (*People v. Pierce* (1944), 387 Ill. 608, 57 N.E.2d 345.) As the supreme court stated in *People v. Hughes* (1962), 26 Ill. 2d 114, 119-20, 185 N.E.2d 834:

> "Where one attached himself to a group bent on illegal acts which are dangerous or homicidal in character, or which will probably or necessarily require the use of force and violence that could result in the taking of life unlawfully, he becomes criminally liable for any wrongdoings committed by other members of the group in furtherance of the common purpose, or as a natural or probable consequence thereof, even though he did not actively participate in the overt act itself."

■ Accordingly, our supreme court has also, consistent with this principle, affirmed murder convictions where the evidence failed to show what specific function a defendant was to perform in a plot to

rob a victim who was killed (*People v. Morgan* (1977), 67 Ill. 2d 1, 364 N.E.2d 56, *cert. denied* (1977), 434 U.S. 927, 54 L. Ed. 2d 287, 98 S. Ct. 411) and where no direct evidence established that the defendant struck any of the blows resulting in the death of the victim (*People v. Ruiz* (1982), 94 Ill. 2d 245, 447 N.E.2d 148, *cert. denied* (1983), 462 U.S. 1112, 77 L. Ed. 2d 1341, 103 S. Ct. 2465).

■ Here, the evidence that the defendant claims to warrant a new trial provides no basis to completely disregard the testimony of Baker and Gardener. It does not raise any question concerning their ability to testify, nor does it raise any question concerning their statements about any of the events prior to the shooting. The defendant's newly discovered evidence actually corroborates the fact that the defendant was present during, and participated in, the armed robbery that resulted in the victim's death. Evidence that fails to refute the defendant's presence at, or participation in, the armed robbery, clearly would not change the result if defendant was retried and, accordingly, fails as evidence sufficient to warrant a new trial.

Additionally, the record here fails to demonstrate that the defendant could not have discovered this evidence prior to trial. While he argues that there was no showing that Holmes or Muskin were available, the defendant's argument misses the point. It is the movant's burden to demonstrate that the new evidence could not have been discovered with the exercise of due diligence prior to trial. (See *People v. Molstad* (1984), 101 Ill. 2d 128, 461 N.E.2d 398.) Furthermore, while the witness, Johnson, stated that she received threats on her life, and did not come forward until her mother-in-law, a friend of defendant's mother, informed her of defendant's plight, it is not unreasonable for the trial judge to view such testimony with suspicion, especially when Spane, to whom she claimed she gave Gardener's gun, denied ever receiving a gun from Johnson.

We find that the testimony of Johnson, Holmes, and Muskin is not of a nature that it would cause a change of result in the trial. Accordingly, we hold that the trial court did not abuse its discretion when it denied defendant's motion for a new trial.

■ The defendant next requests this court to exercise its power under Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)) and reduce his 75-year murder sentence to 30 years. He asserts that fundamental fairness prohibits similarly situated criminal defendants from receiving grossly disparate sentences. He claims that the evidence presented by him during the hearing on his motion for a new trial cast doubt on the relative degrees of participation of the defendant, Gardener and Baker in the armed robbery and murder. Therefore, he

argues that his 75-year sentence offends fundamental fairness since Gardener received a 25-year sentence and Baker was not even charged.

We agree with the defendant's assertion that fundamental fairness and respect for the law require that similarly situated defendants do not receive grossly disparate sentences. (*People v. Cook* (1983), 112 Ill. App. 3d 621, 445 N.E.2d 824.) However, disparate sentences are permissible under numerous circumstances, *e.g.*, where one defendant participates in the offense to a greater extent (*People v. Bennett* (1980), 90 Ill. App. 3d 64, 412 N.E.2d 1001), where one defendant has a more serious criminal record (*People v. Cook* (1983), 112 Ill. App. 3d 621, 445 N.E.2d 824), or where one sentence is pursuant to a plea agreement (*People v. White* (1984), 122 Ill. App. 3d 24, 460 N.E.2d 802).

■ In *People v. White* (1984), 122 Ill. App. 3d 24, 460 N.E.2d 802, the defendant raised the issue of disparate sentences. The defendant there received a life sentence while one of his codefendants received a 20-year sentence. This court held that there was no basis to compare the 20-year sentence because it was an agreed sentence pursuant to a plea agreement. (122 Ill. App. 3d 24, 29, 460 N.E.2d 802.) Similarly, both Baker and Gardener were treated here according to the terms of agreements each made with the prosecutor. Baker testified that the State agreed not to prosecute him for either armed robbery or murder in exchange for his truthful testimony before the grand jury and at the defendant's trial. Gardener testified his agreement provided that he would receive a 25-year sentence, possibly served at an out-of-State Federal penitentiary, in exchange for his guilty plea and truthful testimony at the defendant's trial. As products of agreements with the prosecutor, the State's treatment of Baker and Gardener cannot provide a valid basis of comparison, and, accordingly, we find the defendant's claim to be without merit.

■ The defendant next claims that he was deprived of his right to confront his accusers when the trial court prohibited him from cross-examining Gardener about his knowledge of the penalties for murder. The defendant claims that this line of questioning was essential in order to demonstrate the witness' potential bias by extracting the witness' knowledge of the penalties for murder. On the other hand, the State contends that the defendant was properly permitted to thoroughly cross-examine the witness for potential bias when he was permitted to inquire into the negotiation process and the resulting agreement, and that this additional attempted interrogation was irrelevant.

We find *People v. Lake* (1978), 61 Ill. App. 3d 428, 378 N.E.2d 364, dispositive of the defendant's claim. In *Lake*, both the defendant and an accomplice were charged with the same offense. In exchange for the accomplice's testimony against the defendant, the State agreed to reduce the charge against the accomplice to a less serious offense. At trial, the defendant there was prevented from inquiring about the accomplice's understanding of the sentencing differences between the two charges. This court affirmed the trial court's ruling, and determined that disclosure of the penalties attached to the offense with which a defendant is charged was immaterial and irrelevant to the issues before the court and, hence, preventing such cross-examination was a reasonable restraint on the scope of the examination. (See also *People v. Gibson* (1983), 117 Ill. App. 3d 270, 452 N.E.2d 1368.) Here, the defendant attempted to disclose the range of penalties for murder, the very charge for which he was on trial. This information, as observed in *Lake*, was irrelevant and immaterial to the issues before the jury. In addition, the defendant here was given adequate opportunity to reveal the witness' potential bias by eliciting the fact that the witness negotiated a plea agreement and the particular terms of that agreement. Accordingly, we find that the defendant suffered no prejudice, and the trial court properly denied this cross-examination. See *People v. Owens* (1984), 102 Ill. 2d 88, 464 N.E.2d 261, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 297, 105 S. Ct. 362.

■ The defense contends that the trial court also erred by denying his motion for mistrial after the State elicited testimony that the defendant was a member of a street gang. The defendant argues that evidence of his membership in a street gang was immaterial, highly inflammatory, and extremely prejudicial. The State argues that the defendant waived such claim by failing to raise it in his post-trial motion. Furthermore, the State claims that the remark did not prejudice the defendant in light of the overwhelming evidence of his guilt.

In *People v. Carter* (1985), 132 Ill. App. 3d 523, 477 N.E.2d 1307, a police officer identified a mark on the defendant's left breast as an "El Rukin tattoo" and stated that "El Rukin" was a street gang. There, as here, the defendant failed to include the issue in his post-trial motion. The court in *Carter* found the issue to be waived, and thus, here, as there, we find that the defendant waived the issue by failing to include it in his post-trial motion. The court in *Carter* also found the reference there to be minor and that it " 'did not result in an inflammation of the jury here so as to sway [it] from a rational evaluation of the facts in issue.' " (132 Ill. App. 3d 523, 529, 477

N.E.2d 1307, quoting *People v. Perez* (1981), 94 Ill. App. 3d 377, 380, 418 N.E.2d 969.) We too, likewise, find the reference here to defendant's gang affiliation to be minor and not such as to prevent the jury from rationally evaluating the evidence before it.

Finally, the defendant argues that a "death qualified" jury pursuant to *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, is a jury that fails to represent a fair cross-section of the community and that is prone to convict. However, the case that defendant cites in support of this claim, *Grigsby v. Mabry* (8th Cir. 1985), 758 F. 2d 226, was reversed by the United States Supreme Court in *Lockhart v. McCree* (1986), 476 U.S. \_\_\_, 90 L. Ed. 2d 137, 106 S. Ct. 1758. Additionally, our supreme court flatly rejected the *Grigsby* rationale in *People v. Collins* (1985), 106 Ill. 2d 237, 278-79, 478 N.E.2d 267, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267. Thus, we find no basis for the defendant's contention here. See also *People v. Taylor* (1986), 146 Ill. App. 3d 45.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL and BUCKLEY, JJ., concur.