THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FREDDIE GONZALEZ, Defendant-Appellant.

First District (6th Division)   No. 1—87—0550

Opinion filed September 8, 1989.

QUINLAN, J., dissenting.

Randolph N. Stone, Public Defender, of Chicago (Thomas J. Brosnan and Emily Eisner, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, and Sari L. Slivnick, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The defendant, Freddie Gonzalez, was found guilty by a jury of armed robbery and aggravated battery; and he was sentenced to imprisonment for 4½ years. No issue is made of the sufficiency of the evidence. The case against the defendant was based on his identification by the complainant, Jose Asia, and statements the defendant made to the police.

Before the trial began, the defendant made an oral motion *in limine* requesting that the State be prohibited from introducing any testimony that the defendant was in any way affiliated with a gang and that any testimony regarding the police photo books used to identify the defendant exclude any reference to the Spanish Cobras gang. The judge held that he would allow testimony regarding the defend-

ant's gang membership for the limited purpose of showing the procedure and circumstances leading to his identification.

Asia testified that on September 4, 1986, at about 1:20 p.m. he went home from school. After spending a little time there, he went to the home of his friend Kenneth Siaz at 2321 N. Albany in Chicago. Siaz had a new racing bicycle worth about $200 which he allowed Asia to borrow.

Asia took the bicycle for a ride around the neighborhood at approximately 2:30 p.m. As he was riding in the street through the 3100 block of West Belden, he saw a group of 8 to 10 boys standing on the sidewalk in front of a burned-down building. He knew only one of the boys standing there, and his name was Pony Boy. Asia had lived in the neighborhood for five years before moving out the previous year. He continued to visit everyday and previously had seen a group of individuals in front of the burned-down building who "represented" that they were members of the Spanish Cobras gang. They would so "represent" by yelling out their gang name and making a hand signal like a "C." On the day of the robbery the burned-down building had an "SC" with pitchforks written on it. That symbol meant Spanish Cobras to him.

After riding by the building, Asia's friend Danny stopped him. Asia was about three houses away with his back to the burned-down building. He talked with Danny for five minutes, and Danny left. As Asia was about to leave, a man he later identified as the defendant came up behind him and grabbed the bicycle's handlebars. Asia was still sitting on the bicycle. He said that the defendant was "with the guys in the group behind" him, but he could not say for sure where the defendant had come from, because he had his back to the defendant when he grabbed the handlebars.

He had never seen the defendant before that day, and after the defendant grabbed the handlebars they were face to face and roughly two feet apart. He made an in-court identification of the defendant. He told the defendant it was his friend's bicycle. The defendant threatened that if Asia did not give him the bicycle he was going to hit him. Asia would not give it to him, and the defendant struck him with his clenched fist in the face below his left eye. Asia remained on the bicycle, and the defendant hit him a second time in the forehead. After receiving the second blow, Asia released his grip on the handlebars, and the defendant rode off on the bicycle down Belden.

Asia returned to Kenneth Siaz's house and called the police. When Officer Leo Velez arrived, Asia gave him the physical description for a male Puerto Rican and a description of his clothing. He told Velez that

he thought the robber was a Spanish Cobra. The next day Asia went to the police station and met with Officer Noon. He looked at about 75 photographs of young men in a book. The book contained photos of blacks as well as whites; however, the majority of the individuals were Hispanic. He picked out the defendant's photograph from the book. He did not know whether the defendant belonged to a gang. He acknowledged that he did not give Officer Velez the defendant's eye color because he could not tell what color they were. The entire incident with the defendant lasted a minute. He did not identify the defendant from a lineup; instead, the next time he saw the defendant was at a preliminary hearing after the defendant had been arrested. He identified him at that time.

Officer Noon testified that he observed a bump on Asia's forehead. He gave Asia two Chicago police department photo albums which contained photographs of "self-admitted Spanish Cobra gang members." The court sustained the objection of the defendant and instructed the jury as follows:

"With respect to the last answer, ladies and gentlemen, that these two books contain that of self-admitted Spanish Cobras, the comment of self-admitted is hereby stricken from the record as irrelevant and the defense objection to that is hereby sustained. I must remind you once again, ladies and gentlemen, this testimony concerning the gang membership, the Spanish Cobras, of the defendant is admissible in evidence solely or only to show the circumstances and the procedures that were used in the identification of the defendant in this case."

Noon further testified that on September 11, 1986, after looking for the defendant for a few days, he and his partner Officer John Guzman saw him at 3800 West Leland with one or two other white Hispanic males. As the officers approached, the defendant asked, "If [they were] looking for [him] for that robbery where [he] took the kid's bike." At that point Noon placed the defendant under arrest and took him to Area 5 headquarters.

Noon questioned the defendant alone after giving him his *Miranda* warnings for a second time. The defendant told him he was on Belden Street when he saw a "guy" on a new bicycle. He went up to the person and told him to get off the bike. The person did not want to get off the bike so the defendant forced him off. He then got on the bike and rode off with it. Noon asked the defendant where the bike was, and the defendant replied that he kept it for a day and then gave it to a person named Gunner, a member of the Simon City Royals gang. The defendant denied hitting Asia. The police were unable to recover the

bicycle.

On cross-examination, Noon testified that he and his partner did not have time to say anything to the defendant before he made the statement asking if they were looking for him for the robbery where he took the "kid's bike." Noon typed out a supplemental police report after questioning the defendant which included the defendant's statement that he had taken the bike, did not hit the person from whom he had taken the bike and that he gave the bike to a Simon City Royal gang member named Gunner.

The defendant's evidence consisted, in part, of a stipulation to the testimony of an official court reporter who was present at the defendant's preliminary hearing at which Asia was asked if it took the defendant five minutes to tell him to get off the bike and he answered, "or ten [minutes] or so."

Officer Leo Velez testified for the defense that he met with Asia at approximately 3 p.m. He did not think that Asia provided him with the hair or eye color of the person who robbed him. Velez marked in his report that the hair and eye color were unknown. On cross-examination, he testified that Asia was "hysterical, all shook up." Asia was able to provide a description of the robber's clothes and gave his age, height and weight.

The defendant first contends that the trial court erred in denying his motion *in limine* and allowing the State to introduce testimony of the defendant's gang affiliation with the Spanish Cobras.

■■ The supreme court has spoken on the admissibility of evidence showing a defendant's affiliation with a gang:

> "To prevent the conviction of one accused of a crime merely because of his membership in an organization that is unpopular, it is the thrust of [*United States v.] Rosenberg* that proof of membership is admissible only if there is also sufficient proof to show that membership is related to the crime charged, for example, to show common design or purpose." *People v. Hairston* (1970), 46 Ill. 2d 348, 372, 263 N.E.2d 840.

We cite *People v. Hairston* as the expression by the highest court of this State of the applicable principle of law governing admissibility of evidence of gang affiliation. By no means do we say or imply that *Hairston* is factually apposite here. We recognize that the supreme court affirmed the conviction holding that the evidence of gang affiliation in that case met the court's standard.

The potential for prejudice in the admission of such evidence has been recognized in *People v. Parrott* (1976), 40 Ill. App. 3d 328, 331, 352 N.E.2d 299:

"It is common knowledge that there is a deep, bitter, and widespread prejudice against street gangs in every large metropolitan area in America."

In the trial court, the State argued, and the judge agreed, that evidence was admissible for the purpose of showing the procedure and circumstances leading to the defendant's identification. No Federal or State court case is cited to support introduction of evidence of gang affiliation to show the procedure and circumstances leading to the defendant's identification. Our research has disclosed none.

■■ ■ The issue should not be clouded by reference to this evidence in connection with the rule concerning proof of other crimes or in connection with the hearsay rule. Those issues may be addressed on another day in another case. The narrow issue is whether this evidence was relevant and prejudicial. When evidence is relevant but prejudicial, it is the duty of the judge to weigh the prejudicial effect of the evidence and its probative weight. But the first hurdle is relevance; and we conclude that the evidence was not relevant and its prejudicial effect was considerable. Put another way, the issue is whether proof that the defendant was a member of the Spanish Cobras is "related [or relevant] to the crime charged." We conclude that it was not.

The argument advanced by the State in this court is that "[i]t was *necessary* for the jury to know how the police were able to obtain a positive identification of defendant and thereafter to be able to find and arrest defendant." (Emphasis added.) Our answer is that it was not "necessary." This was a trial; not a motion to suppress evidence. The issue before the jury was whether Asia's identification was correct, not whether the police had probable cause to arrest the defendant and not whether the police acted efficiently. Asia properly testified to the description he gave the police of the physical characteristics of the defendant and the clothing he was wearing, but there was no need for his statement that he "thought" the offender was a Spanish Cobra. The State's argument reduced to its essentials is this: Asia thought the defendant was a Spanish Cobra; the defendant was a Spanish Cobra. Since Asia was right about the defendant's association with the Spanish Cobras, Asia must have been right about his identification of the defendant. To follow the State's syllogism to its logical conclusion, in other cases where identification is the issue, a witness should be permitted to testify, for example, that he thought the perpetrator was an ex-convict, or a pervert, if in fact it can be later shown that the person was an ex-convict or a pervert. As should be obvious, validity of the syllogism, which we doubt, is heavily outweighed by the great prejudice to the defendant.

Asia also properly testified about his identification of the defendant's picture in a book. But there was no necessity to have the book identified as one containing pictures of Spanish Cobras. The State further tells us that with Asia's statement that he believed the man to be a Spanish Cobra, Officer Noon "was able to narrow down the investigation." Again to follow the State's argument to its logical conclusion, in a trial of a person charged with a sex offense, for example, an identifying witness would be able to testify to selection of a picture from a group of photographs of sex offenders, because, the State would argue, the police narrowed its search to known sex offenders.

In our judgment, all references to the Spanish Cobras, including evidence of the actions of a group of persons calling out their gang affiliation and making signs indicating they were members of the Spanish Cobras, were irrelevant and prejudicial. That evidence of the actions of the group of boys was introduced as a circumstance that would lead to the inference that the defendant was a member of the Spanish Cobras, an inference of doubtful validity. But it was also used in a prejudicial manner in the final arguments.

In the opening argument the following occurred:

STATE'S ATTORNEY: "He gives the police a description, a physical description, a clothing description and he tells him, I think he belongs or I think he is a Spanish Cobra. And he explains to you why he made that statement. Here's a young man who grew up in the neighborhood, who spent his summer there because that is where all his friends are and he knows about this particular group, the Spanish Cobras, and again use your common sense. *These kids that live in the neighborhood where these groups hang out know about these groups. They know what they do, what they represent and the signs they use and the graffiti and the hassle they put up with every day.*

DEFENSE ATTORNEY: Objection, Judge.

THE COURT: That is sustained. The last comment, the hassle they put up with every day, the jury is instructed to disregard that." (Emphasis added.)

In an attempt to soften the impact of the improperly admitted evidence, the defendant's attorney argued that the jury should not convict the defendant because "he may be a member of a gang" and that the gang evidence "has nothing to do with this case." The State now argues that that argument invited the following remarks by the assistant State's Attorney:

"STATE'S ATTORNEY: Counsel has just got through telling you it is not a gang case. Well, let me tell you this. It took a lot

of guts for Jose to get on that stand and face this man and say he did—.

DEFENSE ATTORNEY: Objection, Judge.

THE COURT: Sustained.

\* \* \*

STATE'S ATTORNEY: Why would he say that to the police officers that he has committed this robbery. Maybe he didn't think Jose Asia would be here. Maybe he didn't think he would testify.

DEFENSE ATTORNEY: Objection, Judge.

THE COURT: Sustained.

STATE'S ATTORNEY: We don't live in a vacuum in this city. You know what happens in the streets of the city \* \* \*.

\* \* \*

STATE'S ATTORNEY: Now, [Noon] is an experienced officer. He deals in gang crimes. He knew he had this information that this person may have been a Spanish Cobra and lo and behold, he is a Spanish Cobra. He was picked out of the book. He is brought in and he admits to it."

In spite of the fact that the court had already sustained an objection to the prosecutor's remarks about the courage displayed by Asia in testifying, the following occurred:

"STATE'S ATTORNEY: Based on the overwhelming [*sic*] in this case, the fact that Jose had the guts to come in here and testify \* \* \*.

DEFENSE ATTORNEY: Objection, Judge.

THE COURT: That is sustained."

We first observe that there was no admissible evidence that the defendant was a Spanish Cobra nor any evidence that he admitted he was a member of the Spanish Cobras; and we reject the argument that the prosecutor's remarks were invited by the defendant's attorney.

This case is similar to *People v. Parrott* (1976), 40 Ill. App. 3d 328, 352 N.E.2d 299, in which the defendant was convicted of unlawful use of weapons. Hearsay testimony was admitted which included evidence of gang activity. The court held that the evidence was inadmissible as hearsay, and on the additional ground that the evidence was prejudicial, citing *People v. Hairston* (1970), 46 Ill. 2d 348, 363 N.E.2d 840. The State there made an argument similar to that made here: the evidence was relevant to show "the motive, knowledge and intent of the arresting officers." (40 Ill. App. 3d at 328.) The court rejected that argument and emphasized that the prejudicial effect of the evidence, as in this case, was accentuated by the State's improper argument.

The State relies upon *People v. Rivera* (1986), 145 Ill. App. 3d 609, 495 N.E.2d 1088. In that case, however, the State showed that leaders of the Latin Kings had instructed the defendants, who were also members of the Latin Kings, to execute a man because he was selling drugs in an area under the control of their gang without paying dues. The court concluded that the evidence was relevant because it indicated that the gang had not only provided the motive for the murder but the executioners and their weapons as well. In addition, one of the defendants conceded the relevance of gang affiliation in his case.

In passing, we note that the State here made a point of establishing, over objection by the defendant, that neither Asia nor his friend Danny was a member of a gang. While the State's purpose of introducing such evidence was to remove any possible stigma from Asia that it was placing on the defendant, it also removed any possible motive that would justify the admission of the evidence. An argument that this testimony of Asia was probative to counteract any suggestion that Asia was intentionally lying to implicate a rival gang member is considerably weakened by the fact that he was permitted to testify that his friend Danny also was not a gang member, and Danny did not testify. We do not agree with the State's argument that the statement of the defendant that he gave the bicycle to a member of another gang provided the basis of the admissibility of the evidence.

Since we have determined that the evidence was prejudicial, the issue becomes whether or not it was so prejudicial that its admission requires a new trial.

■ The defendant does not contend that the evidence is not sufficient to establish his guilt beyond a reasonable doubt; and we hold that it was. The evidence consisted of an identification and an oral confession; but each aspect of the evidence, although admissible, had some weakness affecting its weight. First, there is an element of suggestion in showing a witness a book marked "Spanish Cobras" after that witness has told the police he thinks the perpetrator was a Spanish Cobra. Second, the defendant was not identified in a lineup, but rather in a courtroom in a preliminary hearing. Such identifications have been criticized. Last, no explanation was given for failure to have a lineup identification.

Passing on to the confession, it was oral and is, in part, at variance with the testimony of Asia. Moreover, the officer testified that the only thing he put in his report was that the defendant said he took the bike but did not hit the victim and that he gave the bike to a man named Gunner. The officer had taken written statements many times; and normally, he either writes the statement out by hand or has a court

reporter take it. He never explained why neither procedure was followed in this case. He wrote out a summation of what the defendant had said, not "completely" what he had said. He never showed it to the defendant nor asked him to sign it. No explanation was made for his failure to show the summary to the defendant or to ask him to sign it.

By these observations we do not mean to suggest that the testimony of Asia and Officer Noon should be disregarded as not credible. We do mean to suggest that their testimony, with its weaknesses, such as they were, does not constitute overwhelming evidence.

We note that in *Rivera* this court reversed the conviction and remanded for a new trial because of the introduction of improper evidence of gang affiliation on the part of a witness' husband in spite of the fact that both defendants had made written confessions. We also note that in *Parrott* this court reversed and remanded for a new trial because of the introduction of prejudicial evidence of gang affiliation without even discussing the sufficiency of the evidence.

We have previously warned against the practice of offering evidence for a limited purpose and, after admission, making impermissible use of the evidence in closing argument. (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 464 N.E.2d 659.) We said that in flagrant cases that practice might lead to reversal. In our judgment, this is such a case. In fact, grounds for reversal in this case are even more compelling since the evidence of gang affiliation was not admissible for any purpose. In our judgment, the defendant did not receive a fair trial.

In view of the position we take on the prejudicial effect of the evidence and the State's argument, it is unnecessary to pass on the defendant's argument that the testimony of the officer that the books contained the pictures of Spanish Cobras was inadmissible hearsay and his argument that an instruction on circumstantial evidence was improperly given.

For these reasons, the judgment of the circuit court is reversed and the cause remanded for a new trial.

Reversed and remanded.

McNAMARA, J., concurs.

JUSTICE QUINLAN, dissenting:
I respectfully disagree with the decision of the majority as well as the rationale for its discussion. In my opinion, the judgment of the trial court should be affirmed. I believe the trial court's denial of the

defendant's motion *in limine*, and its admission of the testimony regarding the defendant's gang membership, for the limited purpose of showing the procedure and circumstances leading to the identification of the defendant, was proper. Furthermore, to the extent that the limitation was exceeded by the State, the defendant objected, and the court sustained the objection and properly instructed the jury concerning the limited purpose of the evidence. However, in any event, I am of the opinion that any error that might have occurred here was harmless error under the circumstances, because the evidence of defendant's guilt was overwhelming.

Additionally, I do not find *People v. Parrott* (1976), 40 Ill. App. 3d 328, 352 N.E.2d 299, or *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, which are relied upon by the majority, to be apposite in this situation. In fact, I believe that both cases can readily be distinguished from the present case. In *Parrott*, the defendant was charged with knowingly possessing and selling an illegal shotgun. There, the State apparently began its case by introducing the testimony of the arresting officers, who testified concerning a department memorandum which stated that the sale of firearms by gangs was occurring within the city and also included Mr. Parrott's name and address as part of the memorandum. (*Parrott*, 40 Ill. App. 3d 328, 352 N.E.2d 299.) It appears quite clear from the opinion that this information was completely irrelevant to the charge of possession and sale of the shotgun involved there. Moreover, the specific basis on which the evidence was excluded by the court there was on the ground that the officer's testimony was impermissible hearsay, and not because of the gang nature of the testimony. (*Parrott*, 40 Ill. App. 3d at 330, 352 N.E.2d at 302.) The *Parrott* court's observation about the widespread prejudice against street gangs, as noted by the majority here, only occurred later in the *Parrott* opinion and was merely a secondary reason for the court's reversal. Furthermore, even then, the *Parrott* court expressly observed that the reason this information (concerning gangs) was incompetent was because, under the circumstances of that case, as noted above, it was irrelevant to the offenses charged. The court said, "[t]he identity of the alleged buyer of weapons had no relationship to the intent, design or motives of the police officers [in investigating the sale of firearms]." *Parrott*, 40 Ill. App. 3d at 331, 352 N.E.2d at 303.

This is not similar to our case. In the *Parrott* case, as stated, the evidence concerning gangs was introduced by the testimony of police officers, and, as found by the court there, for the sole purpose of establishing the truth of gang activity and the defendant's membership in the gang. That was not the case here. In contrast to the reason for

introducing the gang evidence in *Parrott*, the evidence here was introduced initially by the victim, for the purpose of identifying the defendant, and the victim's statement regarding gangs was merely part of the description of his observations concerning the defendant. In fact, this description subsequently led to the defendant's identification and arrest. Such descriptive information seems to me most relevant and, under circumstances such as those here, most proper.[1] Thus, it was not error for the trial court to allow this evidence, even though it may have been prejudicial to the defendant. As this court noted in *People v. Jones* (1987), 161 Ill. App. 3d 688, 515 N.E.2d 166, "evidence of gang membership is admissible if there is sufficient proof that it is related to the crime charged *** and need not be excluded merely because it may tend to prejudice the defendant where it is otherwise relevant and admissible." *Jones*, 161 Ill. App. 3d at 697, 515 N.E.2d at 171; see also *People v. McClendon* (1986), 146 Ill. App. 3d 1004, 1009, 497 N.E.2d 849, 852 (where no error was found in the admission of the victim's testimony that he heard gang slogans being shouted as the defendant struck him and that the defendant was a member of a gang).

In addition, I do not find that *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, relied upon by the majority, requires a reversal of this case because of the admission of the "gang related" evidence either. In that case, the court actually found that the evidence of gang membership was properly admitted. The court stated that the evidence introduced permitted, at least, a reasonable inference that there was a common design or performance to do an unlawful act, and then noted that, contrary to the defendant's contentions, where the evidence of gang activity is relevant and otherwise admissible, it is not to be excluded merely because it may also have a tendency to prejudice the accused. (*Hairston*, 46 Ill. 2d at 372, 263 N.E.2d at 854-55.) That court also found that there was no error in the failure of the trial judge to give a cautionary instruction since, as the court noted, it was the obligation of the defendant to request such an instruction and the defend-

---

[1]The majority also specifically observed that the State made a point of establishing that neither the victim, Asia, nor his friends were gang members and that this evidence was introduced to remove any stigma from Asia that the State was attempting to place on the defendant by associating him with a gang. This, the majority asserts, in effect destroyed any basis for the State's contention that the introduction of gang evidence was for any purpose other than to prejudice the defendant. I respectfully disagree with this unsupported assertion by the majority. It seems to me more reasonable that the State's basis for doing so was to counteract any contention that Asia was lying for purposes of "getting back at" a member of a rival gang, as was the assertion in the *Hairston* case. See *Hairston*, 46 Ill. 2d 348, 263 N.E.2d 840.

ant had failed to do so. (*Hairston*, 46 Ill. 2d at 372-73, 263 N.E.2d at 855.) Consequently, the court affirmed the defendant's conviction there even though no cautionary instruction had been given.

In the present case, as in the *Jones* case discussed previously, the trial court did, however, properly instruct the jury as to the limited purpose of the gang membership testimony. I think it is worthy to note that in *Jones*, this court concluded that such a limiting instruction was sufficient to protect the defendant from any prejudice. (*Jones*, 161 Ill. App. 3d at 697, 515 N.E.2d at 171.) Hence, I likewise believe that the trial court's limiting instruction here was sufficient to protect the defendant from any alleged prejudice and, thus, unlike *Hairston*, any potential prejudice here was offset by the jury instruction. Moreover, I also believe that, in any event, the references here to the defendant's gang membership, when viewed in context, were minor in light of the overwhelming evidence of the defendant's guilt. Therefore, in such circumstances, the testimony concerning the gang membership could not be so prejudicial that it would have prevented the jury from rationally evaluating the proper evidence before it. See *People v. Portis* (1986), 147 Ill. App. 3d 917, 928, 498 N.E.2d 675, 682.

Furthermore, I find it is also noteworthy that Professor Graham, in his Handbook on Federal Evidence, in commenting on the admissibility of evidence of other crimes, wrongs, or acts, observes that great inroads upon the prior rule of exclusion of such evidence has taken place under the modern federal rules of evidence. In fact, he notes that the Federal rule permits the introduction of evidence of another crime, wrong or act *unless* the sole purpose for the offer is to establish the defendant's propensity for crime. (M. Graham, Handbook of Federal Evidence §404.5, at 200-10 (2d ed. 1986); see also *United States v. Ford* (9th Cir. 1980), 632 F.2d 1354, 1375 (where the court there observed that "[the] rule is one of inclusion which admits evidence of other crimes except where that evidence tends to prove only criminal disposition).") Professor Graham also makes a similar observation in E. Cleary & M. Graham, Handbook of Illinois Evidence section 404.5, at 162-69 (4th ed. 1984), where he again emphasizes that evidence of other crimes, wrongs or acts is usually admissible where it is offered for any purpose other than to merely show a propensity on the part of the defendant to commit the crime. He further observes there that the decision with respect to the admissibility of such evidence will be overturned only if there exists a clear abuse of discretion. Hence, it would appear that the admission of the gang evidence here was also consistent with the current view of admissibility of such evidence both in the Federal and State courts.

Accordingly, I find the reversal of the defendant's conviction, as the majority's decision holds, based solely on the admission of the evidence relating to gangs to be unwarranted and unnecessary. I especially find reversal to be unnecessary because, as stated earlier, the evidence of the defendant's guilt is clear. When there is sufficient and competent evidence establishing a defendant's guilt beyond a reasonable doubt, and there has been no showing that an alleged error was the basis for the jury's verdict, the error is harmless and reversal is not warranted. (See *People v. Johnson* (1986), 150 Ill. App. 3d 1075, 1083, 502 N.E.2d 304, 310.) I do not believe that defendant has shown, or could show, that the alleged error here formed the basis for the jury's verdict. Furthermore, to the extent that the majority suggests that portions of the State's evidence should be discounted, apparently as not credible because it was inconsistent with normal prosecution procedures, this is not a proper issue to be decided by this court.[2] Resolution of factual disputes and the assessment of the credibility is for the jury and will not be overturned on appeal unless the evidence is so unsatisfactory or improbable that a reasonable doubt of defendant's guilt remains. (*People v. Williams* (1982), 93 Ill. 2d 309, 315, 444 N.E.2d 136, 138.) This was not the case here, for, as noted by the majority itself, the defendant did not contend that the evidence was insufficient to establish his guilt beyond a reasonable doubt. Consequently, any error here was harmless and did not require reversal.

For these reasons, I would affirm the judgment of the trial court.

---

[2]The majority, however, states that it does not mean that the evidence should be disregarded as not credible, but only that it is weakened, so that in the majority's view, this evidence was not overwhelming. Respectfully, I do not see the legal significance of this distinction. First, the procedures employed here are not, nor does the majority say they were, improper (*i.e.*, not in conformance with some mandatory standard of conduct), illegal, or unconstitutional, so that their use alone would require a reversal. The procedures were just not the normal procedures or the best procedures available to the State. Second, the question of the weight to be given to the evidence is also a proper function of the jury or trier of fact, and the decision of the trier of fact should not be set aside on appeal unless the verdict is against the manifest weight of the evidence. (*People v. Hermann* (1988), 180 Ill. App. 3d 939, 946-47, 536 N.E.2d 706, 711.) Finally, a conviction also should not be set aside simply because the evidence is not overwhelming, but, as observed above in my dissent, should be set aside only where there is a reasonable doubt of the defendant's guilt. (*People v. Jaffe* (1986), 145 Ill. App. 3d 840, 847, 493 N.E.2d 600, 606.) Moreover, a reasonable doubt arises on appeal only when, after viewing all the evidence in a light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43-44, 535 N.E.2d 889, 903.) This was not, as noted by the majority opinion, the situation here.